50 F.3d 9
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Cecelia Denise SHEPARD, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Vance Marcel Gibson, a/k/a Reginald Hilton Belton,
Defendant-Appellant.
 Nos. 94-5307, 94-5494.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 3, 1995.
Decided March 22, 1995.
 
 Appeals from the United States District Court for the Middle District of North Carolina, at Winston-Salem. William L. Osteen, Sr., District Judge. (CR-93-211)
 M.D.N.C.
 AFFIRMED.
 ARGUED: Gregory Davis, Assistant Federal Public Defender, Greensboro, North Carolina, for Appellant Gibson; Nils Edward Gerber, WRIGHT, PARRISH, NEWTON & RABIL, Winston-Salem, NC, for Appellant Shepard. Sandra J. Hairston, Special Assistant United States Attorney, Greensboro, NC, for Appellee. ON BRIEF: William E. Martin, Federal Public Defender, Greensboro, NC, for Appellant Gibson. Walter C. Holton, Jr., United States Attorney, Greensboro, NC, for Appellee.
 Before WILKINS and WILLIAMS, Circuit Judges, and ELLIS, United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Appellants Cecelia Denise Shepard and Vance Marcel Gibson appeal their convictions and sentences for possessing with the intent to distribute cocaine base, see 21 U.S.C.A. Sec. 841(a)(1) (West 1981), and using or carrying a firearm during a drug trafficking crime, see 18 U.S.C.A. Sec. 924(c)(1) (West Supp.1994). Finding no prejudicial error, we affirm.
 
 I.
 
 2
 Viewed in the light most favorable to the Government, Glasser v. United States, 315 U.S. 60, 80 (1942), the facts are as follows. On the morning of June 16, 1993, Detective Jimmy Cook of the Winston-Salem, North Carolina Police Department received an anonymous tip indicating that a man and a woman had recently arrived from New York with a large quantity of cocaine. The tip further indicated that they resided at 222 Motor Road, Apartment # 19, and that they were driving a gray Ford Taurus. Detective Cook then drove to 222 Motor Road and observed a gray Ford Taurus parked outside Apartment # 19; however, he took no further action at that time.
 
 
 3
 Later that day, Detective Cook learned that individuals driving the Taurus were being detained by police following a traffic violation. Upon arriving at the scene, Detective Cook asked Gibson, the rear-seat passenger, to exit the vehicle. Gibson subsequently consented to a search of his person, and when Detective Cook discovered a red pouch in Gibson's pocket, Gibson stated, "Oh, you can search that too." The pouch contained five glassine baggies containing a substance that field-tested positive for a controlled substance. Gibson was then arrested. A routine search of the passenger compartment of the patrol vehicle conducted immediately after Gibson was transported to a detention center uncovered 21 smoke-gray glassine baggies, all of which field-tested positive for cocaine base. The substance recovered from the baggies in the red pouch was later determined to be heroin.
 
 
 4
 After arresting Gibson, officers proceeded to the apartment at Motor Road, where Shepard was located. After Shepard consented to a search of the premises, the officers entered an upstairs bedroom where they observed an electronic scale with white residue on it. The officers also noticed that the mattress on the bed was raised approximately six inches above the box spring. Detective Cook lifted the mattress and found a large, white, rock-like substance--later determined to be cocaine base--and several smoke-gray glassine baggies identical to those recovered from the patrol vehicle after Gibson's arrest. Next to these items were three firearms: a Stevens 12-gauge sawed-off shotgun, an Intratec 9 mm semi-automatic pistol, and an Intratec .22 caliber semi-automatic pistol. Elsewhere in the bedroom, officers found documents bearing Shepard's and Gibson's names as well as several boxes of ammunition.
 
 
 5
 After searching the apartment, Detective Cook again spoke with Gibson. At this time, Gibson signed a waiver of his rights under Miranda v. Arizona, 384 U.S. 436 (1966), and made a statement indicating that although the weapons found in the apartment belonged to him, the drugs belonged to his brother.
 
 
 6
 Shepard and Gibson subsequently were charged in a two-count indictment with possessing with the intent to distribute cocaine base (Count One) and using or carrying a firearm during a drug trafficking crime (Count Two). Count Two of the indictment charged that Gibson and Shepard violated Sec. 924(c)(1) by using or carrying "a Stevens 12-gauge sawed-off shotgun ...; an Intratec, Tec 9, semi-automatic, 9 mm pistol ...; and an Intratec, Tec 22, semi-automatic, .22 caliber pistol" during a drug trafficking crime. After the jury returned a general verdict of guilt on each count, the district court sentenced Shepard and Gibson to 151 months and 262 months imprisonment, respectively, on Count One and to consecutive ten-year mandatory minimum sentences on Count Two.
 
 II.
 
 7
 Although Appellants raise numerous allegations of error during trial, we discuss only Shepard's assertion that the district court erred in admitting certain rebuttal testimony and Gibson's claim that the district court improperly admitted into evidence the heroin found in the red pouch. We review the decision of the district court to admit testimony or evidence for an abuse of discretion. United States v. Francisco, 35 F.3d 116, 118 (4th Cir.1994) (per curiam), cert. denied, 63 U.S.L.W. 3563 (U.S. Jan. 23, 1995) (No. 94-7258); United States v. Lewis, 10 F.3d 1086, 1088 (4th Cir.1993).
 
 A.
 
 8
 Shepard contests the admissibility of the testimony of Harrison Davis, a Community Safety Coordinator with the Winston-Salem Housing Authority, which was offered by the Government in rebuttal. During Shepard's direct testimony, she claimed that she had never been involved with drugs, but acknowledged that she had attended a meeting with Davis at the Winston-Salem Housing Authority regarding drug activity at her residence. In rebuttal, Davis testified that he and his partner spent approximately three weeks conducting surveillance of Shepard's residence. Davis further testified that he observed individuals known to him to be drug dealers from his years of experience as a police officer coming and going from Shepard's apartment while she was present. He also observed these individuals making hand motions that in his experience were consistent with the exchange of drugs and money.
 
 
 9
 Shepard asserts that Davis' testimony was inadmissible under Federal Rule of Evidence 404(b). The Government responds that this testimony was offered to impeach Shepard and to rebut her claim that she had never been involved with illegal drugs. Impeachment is a proper purpose for the admission of evidence of other crimes, wrongs, or acts. See United States v. Stockton, 788 F.2d 210, 219 n. 15 (4th Cir.), cert. denied, 479 U.S. 840 (1986). We conclude that this evidence was properly admitted under the test set forth in United States v. Rawle, 845 F.2d 1244, 1247 (4th Cir.1988), and that the district court alleviated any undue prejudice stemming from the admission of the testimony by the use of an appropriate limiting instruction. See United States v. Hernandez, 975 F.2d 1035, 1039-41 (4th Cir.1992).
 
 
 10
 Moreover, even if Davis' testimony had been improperly admitted, any error was harmless. The cocaine base was found in a bedroom of Shepard's apartment that also contained documents bearing her name as well as photographs of herself and Gibson. And, although Shepard testified that she had never seen the cocaine base before, she acknowledged that she was frequently in the bedroom where the drugs were found. Thus, assuming the admission was error, "we can say 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment[of the jury] was not substantially swayed by the error.' " United States v. Nyman, 649 F.2d 208, 211-12 (4th Cir.1980) (quoting Kotteakos v. United States, 328 U.S. 750, 765 (1946)).
 
 B.
 
 11
 Gibson alleges that the district court erred in admitting testimony and evidence related to the heroin found in the red pouch. He argues that because he was not charged with possession of heroin, any evidence related to it was unduly prejudicial and should have been excluded. The Government claims that evidence regarding the contents of the red pouch was offered only to explain the reason for Gibson's arrest and to provide the context for evidence relating to the glassine baggies found in the patrol car. Even if Gibson were correct that the probative value of this evidence was substantially outweighed by its prejudicial impact, see Fed.R.Evid. 403, we cannot say that the judgment of the jury was substantially swayed by the error. See Nyman, 649 F.2d at 211-12. Gibson was closely tied to the glassine baggies found in the back of the patrol vehicle, all of which tested positive for cocaine base; and, these baggies were identical to those found under the mattress at Shepard's apartment. Additionally, documents bearing Gibson's name were found in the bedroom with the cocaine base as well as photographs of him and items of his clothing. Therefore, we find that any error was harmless and affirm Gibson's convictions.
 
 III.
 
 12
 Although Appellants raise several challenges to their sentences, only the contention that the district court improperly imposed a ten-year mandatory minimum penalty under 18 U.S.C.A. Sec. 924(c)(1) warrants discussion. Because no objection was raised at sentencing to the imposition of the ten-year mandatory minimum sentence, we review only for plain error. See United States v. Rogers, 18 F.3d 265, 268 (4th Cir.1994).
 
 
 13
 Section 924(c)(1) provides in pertinent part:
 
 
 14
 Whoever, during and in relation to any crime of violence or drug trafficking crime ... for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years, and if the firearm is a short-barreled rifle [or] short-barreled shotgun to imprisonment for ten years, and if the firearm is a machinegun, or a destructive device, or is equipped with a firearm silencer or firearm muffler, to imprisonment for thirty years.
 
 
 15
 Thus, the statutory mandatory-minimum sentence varies according to the type of firearm used or carried during the offense of conviction. As applied to Appellants, Sec. 924(c)(1) would require a ten-year mandatory-minimum sentence if Appellants were convicted of using or carrying a sawed-off shotgun, while the mandatory-minimum sentence would be five years if Appellants were convicted of using or carrying either or both of the pistols. Appellants argue that in the absence of a special verdict, it is impossible to tell which weapon or weapons the jury found them to have used or carried, and that because it is possible the jury did not unanimously conclude that they used or carried the sawed-off shotgun, the district court erred in imposing the ten-year sentence rather than the five-year sentence.
 
 
 16
 Appellants point to United States v. Melvin, 27 F.3d 710 (1st Cir.1994), as support for their argument. In Melvin, the defendants were arrested immediately before they attempted to rob an armored truck. Several firearms were found in a van with the defendants when they were apprehended: a .357 magnum pistol was found between the driver's seat and the passenger's seat; a .357 magnum pistol and a 9 mm semi-automatic pistol were found in a bag directly behind the driver's seat; and an Uzi machine gun, a sawed-off, semi-automatic rifle, and a machine gun equipped with a silencer were found in the rear of the van. The indictment listed all of the weapons in a single Sec. 924(c)(1) charge. After being instructed that it need only find that the defendants used or carried one of the weapons listed in the indictment, the jury returned a general verdict of guilt. At sentencing, the district court refused to impose the highest mandatory-minimum penalty available under Sec. 924(c)(1)--30 years for use of the machine gun or the machine gun equipped with a silencer. Instead, the district court imposed a five-year mandatory-minimum sentence for use of one of the pistols. The Melvin court affirmed, reasoning that although there may have been sufficient evidence to support a conviction for use of one of the machine guns, it was not possible to "exclude beyond a reasonable doubt the possibility that the jury rendered a guilty verdict ... based on a determination that the defendants possessed only a handgun." Id. at 715; see also United States v. Quicksey, 525 F.2d 337, 340-41 (4th Cir.1975) (disapproving imposition of higher penalty when conspiracy charge alleged two objects with differing penalties in the disjunctive and the jury returned a general verdict of guilt), cert. denied, 423 U.S. 1087 (1976).
 
 
 17
 Melvin is distinguishable. Here, the district court instructed the jury by first reading Count Two of the indictment verbatim, including the conjunctive listing of the weapons in the Sec. 924(c)(1) charge. And, the verdict forms specified that the jury found Appellants guilty "of the crime charged in Count Two of the Indictment." Moreover, unlike Melvin, the jury was not instructed that it need only find that Appellants possessed one of the weapons in order to convict on the Sec. 924(c)(1) charge. Therefore, the finding of guilt by the jury must have been based on the indictment, which alleged that Shepard and Gibson possessed the two pistols and the sawed-off shotgun. Under these circumstances, we conclude that the jury could not have returned a verdict of guilt based on a determination that Appellants used or carried only one of the weapons.
 
 
 18
 We have carefully considered all other allegations of error and find them to be without merit.
 
 AFFIRMED