UNITED STATES of America, Appellee,

v.

James E. MELVIN, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Michael C. HABICHT, Defendant,
Appellant.

UNITED STATES of America, Appellee,

v.

Patrick J. NEE, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Robert Emmett JOYCE, Defendant,
Appellant.

UNITED STATES of America, Appellee,

v.

Michael O. McNAUGHT, Defendant,
Appellant.

Nos. 92–1563 to 92–1566 and 92–1724.

United States Court of Appeals,
First Circuit.

Argued Dec. 7, 1993.

Decided June 22, 1994.

Martin G. Weinberg, Kimberly Homan, Boston, MA, Judith Mizner, Newburyport, MA, Kenneth J. Fishman, and Anthony M. Cardinale, Boston, MA, on memoranda, for appellants.

Stephen P. Heymann, Asst. U.S. Atty., Donald K. Stern, U.S. Atty., and James B. Farmer, Asst. U.S. Atty., Boston, MA, on memorandum, for appellee.

Before TORRUELLA, Circuit Judge, COFFIN, Senior Circuit Judge, and STAHL, Circuit Judge.

## OPINION AND ORDER ON THE APPELLANTS' MOTION FOR CLARIFICATION

COFFIN, Senior Circuit Judge.

The six defendants in this case were convicted on various charges arising from an attempted robbery of an armored truck. In an earlier opinion, we reversed their convictions based on the improper admission of evidence concerning prior firearms-related convictions. *See United States v. Melvin, et al.,* 27 F.3d 703 (1st Cir.1994). Five of the defendants did not appeal their convictions on Count 14 of the indictment, however, which charged that defendants used and carried a firearm in connection with a crime of violence. *See* 18 U.S.C. § 924(c).[1] Because our decision made no specific reference to Count 14, the defendants filed a Motion for Clarification asking that we amend our opinion to state explicitly that their convictions on that count remain intact. The government opposed the motion, arguing that the defendants were seeking inappropriately to foreclose a higher sentence on Count 14 upon retrial. We conclude that the defendants' motion should be granted, and therefore also address below the government's appeal of the sentence imposed on that charge.

### I. *Motion for Clarification*

We think it apparent that defendants decided not to appeal Count 14 because of an error at trial that may have worked to their benefit. All parties concede that the jury mistakenly was not asked to identify which of the six firearms at issue in this case—ranging from machine guns to handguns—underlay its guilty verdict on Count 14. The district court recognized the error at sentencing and, as a consequence, refused to impose the 30–year prison term mandated under § 924(c) for use of machine guns, instead imposing only the five-year term set for less serious firearms.[2]

By removing Count 14 from their appeal, the defendants took a calculated risk. If they had challenged that charge successfully, a new trial would have been required and

1. Although the defendants originally included Count 14 as part of their appeal, all but Murphy later filed a motion, which we granted, seeking to withdraw the appeals of their convictions on that count.

2. Section 924(c) provides, in relevant part:

   (c)(1) Whoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years, and if the firearm is a short-barreled rifle, short-barreled shotgun to imprisonment for ten years, and if the firearm is a machine gun, or a destructive device, or is equipped with a firearm silencer or firearm muffler, to imprisonment for thirty years....

they might have been acquitted. On the other hand, they might have been convicted again, without error, based on a jury finding that they had used a machine gun or other serious weapon in attempting the robbery. A 30–year sentence necessarily would follow. Five of the six defendants evidently felt that, all things considered, the chance of acquittal was outweighed by the risk of the longer sentence.[3] The Motion for Clarification asks that we recognize, and permit, this choice.

The government's response to the clarification motion is twofold. First, it points out that if we grant defendants' motion and leave the Count 14 conviction undisturbed, we must address the government's sentencing challenge and should find that defendants are subject to the 30–year sentence. Second, the government vehemently asserts that we should deny the motion, arguing that the Count 14 conviction may not stand in the face of our decision that serious, reversible error occurred at trial.[4] The government contends that such an inconsistency disserves the interests of justice, that the defendants should not be permitted to control sentencing options in such a manner, and that we have the authority to reverse the § 924(c) convictions notwithstanding the defendants' decisions against appealing.

After considering the various possible outcomes, and the policies at stake, we have concluded that it would be at least inappropriate, and probably a violation of double jeopardy principles, for us to vacate defendants' unappealed convictions on Count 14 and order that they be retried on that charge. The government cites no case in which a court has taken the extraordinary step of reaching beyond the charges before it on appeal to invalidate a conviction that neither party has challenged.

The government relies instead on what we believe is wholly inapposite caselaw on sentencing. This precedent establishes that an appellate ruling invalidating a sentence, or reversing on some, but not all, counts of an indictment may implicate the trial judge's comprehensive, interdependent imposition of a penalty and thus require resentencing on all counts. *See United States v. Pimienta–Redondo,* 874 F.2d 9, 16 (1st Cir.1989) (en banc). The case before us presents a vastly different question. Rather than seeking re-evaluation of a defendant's *punishment* in light of changed circumstances, the government asks that we put the issue of defendants' *guilt* on Count 14 to another jury. The government presumably makes this request because it wants another chance to elicit a specific finding that defendants used or carried automatic weapons, which in turn would require a longer sentence. The government's unilateral pursuit of a retrial strikes us as directly at odds with the double jeopardy prohibition "against a second prosecution for the same offense after conviction," *Jones v. Thomas,* 491 U.S. 376, 381, 109 S.Ct. 2522, 2525, 105 L.Ed.2d 322 (1989).

Neither the inconsistency of excluding Count 14 from a retrial nor the defendants' "controlling" their sentence on that count by ensuring that it will be determined finally in the course of this appeal is particularly troubling. Our system of justice is not a precise and mechanical operation and, indeed, that is one of its virtues. We permit inconsistent verdicts in certain circumstances, *see, e.g., United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), and the fact that defendants may have fared better than perhaps they would have in an error-free trial does not seem reason enough to compel retrial against their will, compromising the principle of finality embodied in the double jeopardy clause. *See Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977); *United States v. Wilson,* 420 U.S. 332, 343, 95 S.Ct. 1013, 1022, 43 L.Ed.2d 232 (1975).

---

3. To make matters even more complicated, the defendants also needed to consider that the government had appealed the five-year sentence imposed on Count 14, arguing that the record required a finding that they had used automatic weapons and thus were subject to the 30–year term.

4. In a petition for rehearing on our original decision in this case, the government argued that we should not have reversed the convictions on all counts based on the improper admission of evidence concerning the defendants' prior firearms-related felony convictions. We have denied that petition in a separate order.

We therefore conclude that defendants' Motion for Clarification should be granted, and that Count 14 may not be retried.[5] Consequently, we must consider the government's challenge to the sentence imposed on that charge. As we discuss below, our review of the record and caselaw persuades us that the district court acted properly and that the five-year terms must be affirmed.

## II. *Factual Background*

We confine ourselves to a review of those facts particularly relevant to the sentencing issue. The six defendants were arrested near a Bank of New England branch in Abington, Massachusetts, shortly before the scheduled delivery of funds to the bank by an armored truck. Three defendants—Joyce, McNaught and Nee—were arrested about a block from the bank in a van whose back seats had been removed. McNaught was in the front passenger seat. Nee was crouched, or kneeling, immediately behind the driver's seat. Joyce was similarly crouched, or kneeling, behind Nee. Melvin, who had been observed driving the van that morning, was arrested on foot a short distance away. The driver's seat was empty.

Six guns, all loaded, were found in the van. On the floor between the driver's and passenger's seats was a .357 magnum pistol. An Uzi machine gun was on the floor behind the driver's seat, near Nee. To the rear of the Uzi, near Joyce, were two weapons: a semi-automatic rifle (with sawed-off stock and sawed-off barrel), and a second machine gun equipped with a silencer. Two other firearms were found in a nylon bag directly behind the driver's seat: a second .357 magnum pistol and a 9 mm. semi-automatic pistol.

Defendants Habicht and Murphy were arrested a short distance away in another stolen car, whose back seat also had been removed. The car contained various items ostensibly for use in the robbery,[6] but no firearms.

Count 14 of the indictment charged the defendants with a violation of section 924(c) for the use and carrying of each of the six weapons and silencer found in the van. At trial, the defendants attempted to establish that they had no intention to commit an armed robbery, the "crime of violence" on which the § 924(c) charge was based. Joyce and McNaught, the only defendants to testify, both claimed that the Abington theft was to have been an "inside" job requiring no weapons or force. Joyce asserted that the arsenal of weapons found in the van had been discovered only moments before the arrests when he opened a bag that he believed contained car theft tools and which had been given to him two days earlier by the government's cooperating witness, Ryan. Joyce and McNaught both testified that the defendants were shocked and angered at the unexpected presence of the weapons, and immediately called off the robbery.

At the close of the evidence, the defendants requested that a "special verdict" be given for Count 14, requiring the jury to specify which weapon or weapons, if any, it found the defendants to have knowingly used or carried. The government objected, and the district court denied the motion. In its charge on Count 14, the court instructed the jury that it need find knowing use or possession of only one firearm to support a guilty verdict:

> I am now going to talk about … Count Fourteen. These are the firearms charges, that the defendant knowingly used or carried firearms. The indictment may say "and," and wherever the indictment says "and," it means "or, and/or." It is in the conjunctive. It can mean in the disjunctive. *What that means is that the government must prove that each defendant used or carried any one firearm.* …

---

**5.** We leave to the district court in the first instance consideration of the collateral estoppel consequences, if any, of appellants' convictions on Count 14. *Compare United States v. Pelullo,* 14 F.3d 881, 890–96 (3d Cir.1994) (collateral estoppel may not be applied against defendant in criminal case) *with United States v. Colacurcio,* 514 F.2d 1, 4–6 (9th Cir.1975) (collateral estoppel in criminal case not limited to such matters as defendant's status).

**6.** The car contained, *inter alia,* materials presumably to be used in torching the vehicle following the robbery, a ski mask, a walkie-talkie and a radio scanner set to police frequencies.

With respect to Count ... Fourteen of the indictment, note that while the indictment is written in the conjunctive, in that it uses "and" as a connector, the government is required to proof [sic] only that the charged defendants knowingly used or carried a firearm. Similarly, the indictment charges in Count ... Fourteen that the listed defendants used or carried a number of firearms during and in relation to several specified crimes. *The government must prove that each defendant used or carried any one firearm, but not necessarily all of them,* during and in relation to any one, but not necessarily each, of those specified crimes. You must agree unanimously as to which firearm or firearms were used or carried during and in relation to which specified crime or crimes.

Tr. 25:111 (emphasis added). The jurors thus were told that they must agree on the firearm or firearms used by each defendant, but were not asked to report these findings in their verdicts.

At sentencing, the government sought the imposition of the mandatory thirty-year term prescribed by § 924(c) when the firearm at issue is a machine gun or silencer. The trial court, however, concluded that it had erred in not asking the jury to find specifically which of the firearms the defendants had possessed, or whether one or more of the weapons in the van was, in fact, a machine gun. It therefore refused to impose more than the lowest possibly applicable sentence—the five-year term prescribed for handguns.[7]

On appeal, the government claims that the court erred in so limiting the defendants' punishment. It contends that the law permits, and the facts require, imposition of § 924's most severe sanction, the mandatory thirty-year term prescribed for the use or carrying of machine guns or a silencer.

## III. *The Jury's Verdict*

■ The government acknowledges that a defendant found guilty of violating § 924(c)

may be sentenced to a thirty-year term only if the jury specifically identifies a machine gun or silencer as the firearm supporting the conviction. *See United States v. Martinez,* 7 F.3d 146, 148 & n. 1 (9th Cir.1993); *United States v. Sims,* 975 F.2d 1225, 1235 (6th Cir.1992). It also is undisputed that the jury in this case mistakenly was not asked to specify the weapon or weapons underlying its verdict. The government claims that the thirty-year term nevertheless applies because, in the unique factual circumstances of this case, a finding that defendants used machine guns is "implicit and inescapable" from the jury's general verdict.

The government's thesis goes like this: because all of the weapons were found in the same place—the van—and because neither the prosecution nor defense offered the jury a theory for distinguishing among the firearms, there was no rational basis upon which the jury could conclude that any particular defendant used or carried some of the firearms but not others. The government emphasizes that the jury's guilty verdict on Count 14 demonstrates its rejection of the defense, sounded again and again throughout the trial and closing arguments, that the would-be robbers intended a wholly nonviolent takeover of the armored truck. Evidently having disbelieved Joyce and McNaught's testimony that Ryan was responsible for the weapons, the jury must have concluded instead that they were knowingly brought along by the defendants. The defendants made an all-or-nothing argument about the firearms, the government points out, and so the jury must have reached an all-or-nothing verdict.

■ This is certainly one plausible interpretation of the jury's decisionmaking. Our task in these circumstances, however, is not to determine whether the evidence and argument *could* support the government's interpretation of the jury's verdict, but whether it inevitably *must* lead to such a construction.

---

7. Recognizing the possibility of an appeal on this issue, the court also set forth its own factual findings in the event a jury determination on the specific firearms used subsequently was ruled to be unnecessary. The court found, by a prepon-

derance of the evidence, that all six defendants knowingly used and carried two machine guns, a silencer and a short-barreled rifle in connection with a crime of violence, in violation of § 924(c).

This standard was well articulated by the Eleventh Circuit in *United States v. Dennis*, 786 F.2d 1029 (11th Cir.1986), a drug conspiracy case in which the indictment charged involvement with several different drugs, carrying different penalties, and the jury returned a general verdict that did not specify the drug supporting its decision:

> [T]he reviewing court in such a situation may not examine the evidence presented at trial to determine whether the jury, if properly instructed *could* have or even *should* have found a heroin/cocaine conspiracy and returned a verdict indicating as much; rather, the court's inquiry is confined to determining beyond any reasonable doubt whether the jury *did* find such a conspiracy and whether it intended the verdict it returned to reflect that determination. Only in that manner may we avoid invading the special province of the jury in a criminal case both to find the facts and apply the law as it sees fit.

*Id.* at 1041 (emphasis in original). *See also United States v. Pace*, 981 F.2d 1123, 1129–30 (10th Cir.1992); *United States v. Quicksey*, 525 F.2d 337, 340–41 (4th Cir.1975).

We have concluded that we may not exclude beyond a reasonable doubt the possibility that the jury rendered a guilty verdict on Count 14 based on a determination that the defendants possessed only a handgun—the weapon found in the front of the van. Although it is true, as the government argues, that both prosecution and defense repeatedly dealt with the six weapons as an undifferentiated collection, the evidence and jury charge provided an obvious opportunity for the jury to distinguish among them.

The evidence permitted the jury to find that the handgun found on the floor between the two front seats had been placed there deliberately and carefully. It was, at least to some extent, separated from the five weapons found in the back of the van, all of which were inside, or very close to, the bag that the defendants claimed Ryan had provided. Certainly, the jury reasonably could have focused on the handgun and concluded that, whatever the defendants' relationship to the automatic weapons, that one firearm had been brought along purposefully.

Indeed, the court's instruction explicitly permitted the jury to avoid deciding the source of the weapons found in the rear of the van, by emphasizing that Count 14 required a finding of only a single firearm. *See supra* at 713. Thus, the jurors might have suspended their deliberations on the use of firearms once they concluded that these experienced criminals must have carried at least a single gun—the handgun in the front seat—for use as a show of force or to discourage heroic efforts against them.

The fact that neither the government nor defense urged such an approach to the evidence does not preclude the possibility that the jury reached its result in that way. In our view, focusing on the handgun was a fairly obvious choice for the jurors, particularly if there were any disagreement among them about Ryan's role in providing the weapons.[8]

We therefore conclude that the jury's verdict fails to establish, beyond a reasonable doubt, that the jurors found that the defendants violated § 924(c) through use of weapons subject to a term of imprisonment greater than five years. Consequently, we affirm the district court's 60–month sentence on Count 14.[9]

---

**8.** In all likelihood, the defendants deliberately avoided distinguishing among the weapons in the hope that the jury would be persuaded that no weapons at all were intended to be used. In other words, it was not in their interest to highlight the front-seat weapon. This strategic decision does not, however, foreclose them from arguing, nor us from concluding, that the jurors reasonably could have drawn such a distinction themselves based on the evidence and instructions.

**9.** The defendants argued that, even if we found that the jury's verdict unambiguously reflected a finding that all of the weapons found in the van were used by all of the defendants, the 30–year sentence could not be imposed because the jury had not been asked to decide whether those firearms were, in fact, automatic weapons and whether the defendants knew the nature of the weapons. The government contended that it was the court's role to determine the appropriate label for the firearms, and that it was unnecessary to prove knowing use of automatic weapons. Our conclusion that the jury's verdict was ambiguous makes it unnecessary to consider these other questions.

## IV.

Some further comment is necessary. The problem in this case resulted, at least in part, from the government's understanding of our precedent on special verdicts in criminal cases. *United States v. Spock*, 416 F.2d 165 (1st Cir.1969), remains a leading authority against the use of special verdicts based on their potential for leading the jury to the prosecution's desired conclusion. *Id.* at 180–83.

Even in *Spock*, however, we recognized that there may be circumstances in which eliciting particularized information from the jury will be permissible. *See* 416 F.2d at 182–83 & n. 41. *See also Heald v. Mullaney*, 505 F.2d 1241, 1245–46 (1st Cir. 1974) (some usages of special interrogatories may be exempt from the dangers described in *Spock* ). We believe this is such a context. Where, as here, a statute proscribes more than one type of conduct, with penalties that vary depending upon the acts committed, some method of ascertaining the jury's specific finding is necessary.

At least two circuits have held expressly that the ambiguous verdict problem in a § 924(c) case may be handled either through use of special interrogatories or by submitting separate counts to the jury for each firearm allegedly used and, should there be more than one conviction, merging those convictions after the trial. *See Martinez*, 7 F.3d at 148 n. 1; *Sims*, 975 F.2d at 1235. In either approach, if the jurors find that the defendant used or carried firearms falling within several categories of weapons, the sentence imposed will be for the most dangerous weapon; *i.e.*, the defendant will receive the highest of the varying applicable terms. *See Martinez*, 7 F.3d at 148–49; *Sims*, 975 F.2d at 1236.

We agree that either of these two procedures would be acceptable, and we are joined in this conclusion by the government. Although contending that the result in this case is self-evident, the government acknowledges that determining a jury's precise verdict in a § 924(c) case involving multiple firearms usually will require resort to one or the other of these techniques. It bears repeating that allowing these techniques, in this context, is not inconsistent with *Spock;* these are precisely the circumstances in which we recognized that an exception to the rule against special interrogatories might be necessary. *See* 416 F.2d at 182 & n. 41. *Accord United States v. North*, 910 F.2d 843, 910–11 (D.C.Cir.1990) (recognizing that special verdicts may be employed in certain contexts, including "as a means of more precisely determining an appropriate and fair punishment").[10] *See also United States v. Bounds*, 985 F.2d 188, 194–95 (5th Cir.1993) (multiple drug conspiracy case); *United States v. Owens*, 904 F.2d 411, 414–15 (8th Cir.1990) (same); *Newman v. United States*, 817 F.2d 635, 637 & n. 3 (10th Cir.1987) (same); *Dennis*, 786 F.2d at 1041 (same); *United States v. Orozco–Prada*, 732 F.2d 1076, 1083–84 (2d Cir.1984) (same).

*The Motion for Clarification is granted, and our original decision is modified to exclude remand for retrial of Count 14 for defendants Melvin, Joyce, Habicht, Nee and McNaught. We affirm the five-year sentence imposed on that charge.*

---

**10.** Although the court in *North* noted that special interrogatories for sentencing reasons have been deemed appropriate when the defendant has *requested* or *accepted* them, a court presumably must have the discretion to adopt the procedure even if the defendant has not explicitly approved in order to avoid ambiguous verdicts such as the one at issue here.