**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jeffrey Joe ALERTA, Defendant–Appellant.**

No. 95–10224.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 7, 1996.

Decided Sept. 23, 1996.

Karon V. Johnson, Assistant United States Attorney, Agana, Guam, for plaintiff-appellee.

David J. Highsmith, Highsmith & O'Mallen, Agana, Guam, for defendant-appellant.

Before: FLETCHER, D.W. NELSON, and CANBY, Circuit Judges.

CANBY, Circuit Judge:

## I.

Defendant Jeffrey James Alerta appeals his convictions and sentences for conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846 (Count 1); conspiracy to use firearms during and in relation to drug trafficking in violation of 18 U.S.C. § 371 (Count 2); distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1) (Count 3); possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (Count 4); and use of a firearm during and in relation to drug trafficking in violation of 18 U.S.C. § 924(c)(1) (Count 5).

Alerta raises two points on appeal that have merit: (1) he contends that the fact that the weapon he used or carried was a machine gun, which added 25 years to his sentence, is an element of the crime under section 924(c)(1) that must be found by the jury; and (2) he contends that he was improperly convicted and given consecutive sentences for two conspiracies when there was only one.

We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We reverse the conviction on Count 5 because the jury did not expressly find that Alerta carried or used a machine gun, and nothing in the jury's verdicts leads inescapably to the conclusion that it made such a finding implicitly. We vacate the conviction and sentence on Count 2 because the charges of conspiracy to distribute drugs and the conspiracy to use firearms in distributing drugs were multiplicitous; Alerta cannot be subjected to punishment on both charges. We affirm the convictions and sentences on Counts 1, 3, and 4.

## II.

Alerta and his brother, Jesse James Alerta, were involved in selling ice, a type of methamphetamine. An informant working under the supervision of the Guam police purchased ice from either Alerta or his brother on five occasions in 1994. During one of these transactions, the informant purchased from Alerta a 12–gauge shotgun and ice.

A few months later, an undercover Guam police officer purchased a Smith & Wesson 9mm pistol and ice from Alerta, and two days later he purchased a Mossberg 12–gauge shotgun from him. During the latter meeting, Alerta became suspicious that the undercover officer might work for the police.

While questioning the undercover officer, Alerta held a 9mm pistol and made threatening gestures with it. During this same meeting, Alerta took out another weapon, a fully automatic Intratec TEC–9, and pointed it at the undercover officer. As Alerta talked to the undercover officer, he placed the TEC–9 on a table and spun it; he stopped the gun as it was spinning so that the barrel pointed at the undercover officer. After questioning the undercover officer, Alerta apparently was satisfied that he was not an informant and sold him the Mossberg shotgun.

The next day, the Guam police searched Alerta's residence pursuant to a search warrant. Another codefendant, Larry Charfauros, was in the front yard of the residence carrying a Taurus PT–92 AF 9mm pistol. Alerta was arrested outside the residence; he possessed a half gram of ice and was carrying an Intratec TEC–9 9mm pistol that had been converted to fire automatically. Alerta's brother Jesse was also arrested and was carrying over $6,000; five of the bills were identified as money that the undercover officer had paid Alerta during their two meetings. In the residence the police also found 3.2 grams of ice packaged in straws, a bag containing 236 grams of ice, and a Smith & Wesson .45 caliber pistol.

After being advised of his *Miranda* rights, Alerta directed the police to an Ingram MAC–10 9mm pistol, which had been converted to fire automatically, located in the residence. Alerta admitted receiving the TEC–9 and MAC–10 as collateral for drug debts. Alerta had personally modified the TEC–9 to fire automatically, and the MAC–10 was fully automatic when received. Alerta identified the 236–gram bag of ice as belonging to his brother Jesse. Alerta admitted he had dealt drugs for the preceding six months and that Jesse was his source of the drugs. Alerta also said that the reason he and Charfauros were in the front yard

armed when the search warrant was executed was to provide protection.

Alerta, Jesse, and Larry Charfauros were indicted in October 1994. Jesse pleaded guilty to two counts of the indictment—distribution of methamphetamine and use of firearms during drug trafficking. The district court granted Charfauros's motion to sever, and Alerta's case was then tried separately to a jury. Alerta did not testify at his trial, but Jesse did. Jesse testified that he did not have an agreement with anyone to purchase ice and that he did not make an agreement with Alerta to use firearms while trafficking. He also testified that he did not have an agreement with Alerta to bring drugs into Guam and to have Alerta sell them for him. On cross-examination, however, he admitted that he had been importing ice from California and that Alerta and others had sold it for him. He admitted bringing the 236–gram bag of ice into their residence. He testified that Alerta gave him the Smith & Wesson .45 caliber pistol to hold as collateral for a drug deal.

The jury convicted Alerta on all counts of the indictment. The district court sentenced him to 120 months on Counts 1, 3, and 4 to be served concurrently, and to 360 months on Counts 2 and 5 to be served concurrently with each other, but consecutively to the 120–month sentences on the other counts, for a total of 480 months. The 360 month sentence on Count 5 was mandatory when the firearm used or carried in violation of section 924(c)(1) is a machine gun.[1]

### III.

#### A.

▊ We begin with a collateral matter concerning Alerta's failure to provide a complete record on appeal or to comply with Fed.R.App.P. 10(b)(3). For his appeal, Alerta ordered only the trial transcripts of wit-

---

1. Under 18 U.S.C. § 924(c)(1), if defendant uses or carries a firearm during a drug trafficking offense, then he shall be sentenced to 5 years in addition and consecutive to his sentence on the underlying drug offense, if any. The sentence is increased to 10 years if defendant uses or carries a short-barreled rifle or shotgun or semiautomatic weapon. The sentence is 30 years if defendant uses or carries a machine gun, destructive device, or silencer. A machine gun, as that term is used in section 924(c)(1), is a weapon that shoots "automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b); *see also* 18 U.S.C. § 921(a)(23).

ness testimony. *See* Fed.R.App.P. 10(b)(1). According to Fed.R.App.P. 10(b)(3), "[u]nless the entire transcript is to be included, the appellant shall [within 10 days of filing the notice of appeal] file a statement of the issues the appellant intends to present on the appeal, and *shall serve on the appellee* a copy of the order or certificate and of the statement." (Emphasis added.) This Alerta did not do. The government argues that because it was not given notice as required under F.R.A.P. 10(b)(3),[2] it had no opportunity to expand the record by ordering additional transcripts. *See* F.R.A.P. 10(b)(3); Circuit Rule 10–3.2(c).

■ If an appellant fails to comply with Rule 10(b)(3), this Court, in its discretion, can dismiss the appeal. *See Beecher v. Smithson*, 205 F.2d 113, 113 (9th Cir.1953) (per curiam); *United States v. Gallagher*, 151 F.2d 556, 559–60 (9th Cir.1945). Failure to include the complete record, however, does not deprive us of jurisdiction over the appeal. *Id.* Rather than dismissing Alerta's appeal for failure to comply with Rule 10(b)(3), we will reach the merits because we conclude that the record presented to us is sufficient to permit us to resolve Alerta's appeal.

**B.**

■ Alerta argues that the jury instruction on Count 5 was erroneous, at least when combined with the failure to require a special verdict, because it did not require the jury to find that Alerta used or carried a machine gun, as opposed to some other type of firearm, during and in relation to drug trafficking. Alerta's contention presents a question of law that we review de novo. *See United States v. VonWillie*, 59 F.3d 922, 927 (9th Cir.1995).

Alerta requested a jury instruction that would have asked the jury to find that he used or carried particular weapons. He also proposed that the jury be furnished a special

verdict form, which required the jury to find him "guilty" or "not guilty" of the use during a drug transaction of the various weapons, by name and type, to which the testimony had related. Alerta's proposed form did not correspond exactly to the allegations of Count 5, however, and it failed to list one of the machine guns.

The district court did not submit a special verdict form to the jury. In instructing the jury with regard to Count 5, the substantive section 924(c) count, the court stated the requisite element of use or carriage of a firearm as follows:

> In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:
>
> * * * *
>
> Second, the defendant knowingly used or carried *any* of the following firearms: a Smith & Wesson .45 caliber pistol ...; a loaded Intratec TEC–9 machine gun, a loaded Taurus Model PT–92 9mm pistol, *or* a loaded Ingram .45 caliber MAC–10 machine gun, while committing the crime.

(Emphasis added.) The government proposed this instruction, citing 9th Cir.Crim. Jury Instr. 8.19(U) (1992).

Thus, the jury did not find specifically what type of weapons Alerta used or carried.[3] Two of the weapons listed in the given jury instruction, the Intratec TEC–9 and the MAC–10, were machine guns and were so denominated; the rest of the named weapons were not. The jury instruction stated that if the jury found that Alerta used or carried "any" of the weapons on that list during drug trafficking, then it must find Alerta guilty of Count 5. It is therefore possible that the jury found only that Alerta used one or more of the weapons that were not machine guns, in which case the requisite consecutive sentence for Count 5 would be 5 years, not the

---

**2.** Alerta also did not comply with the notice requirements of Circuit Rule 10–3.2(b), which directs the appellant to serve on the appellee, within 7 days after filing the notice of appeal, a notice setting forth what portions of the record the appellant has ordered, if appellant did not order the complete record.

**3.** Alerta raises no issue under *Bailey v. United States*, — U.S. —, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). He does not contend that he did not "use" or "carry" a firearm "during and in relation to" a drug trafficking crime as those terms were defined in *Bailey*. *See id.* at ———, 116 S.Ct. at 507–08.

30–year sentence that Alerta received. *See* 18 U.S.C. § 924(c)(1).

Because of the immense consequences that follow a determination whether a firearm used in violation of section 924(c)(1) is an ordinary firearm or, at the other extreme, a machine gun, we have stated that a jury finding on that issue is required. *United States v. Martinez*, 7 F.3d 146, 148 & n. 1 (9th Cir.1993); *see also United States v. Sims*, 975 F.2d 1225, 1235 (6th Cir.1992) (concluding that "the difference between the applicable sentences for handguns and machine guns mandates" that the jury "specify which category or categories of weapons it unanimously has found the defendant was using or carrying"), *cert. denied sub nom. Gardner v. United States*, 507 U.S. 932, 113 S.Ct. 1315, 122 L.Ed.2d 702 (1993).

> Where the defendant is charged for using different types of weapons under section 924(c)(1), the district court should either (1) submit separate counts under section 924(c)(1) to the jury, and, if there is more than one conviction, merge those convictions after the trial, or (2) submit one section 924(c)(1) charge to the jury with special interrogatories requiring the jury to specify which weapons the defendant used or carried.

*Martinez*, 7 F.3d at 148 n. 1.

Although the government points out that Alerta's proposed special verdict form was flawed, it recognizes that a special verdict form should have been submitted to the jury to establish that Alerta used either the TEC–9 or the MAC–10 machine gun (or both) during and in relation to his drug trafficking crimes. The government argues, however, that the error is harmless.

The government contends that the character of the firearm is not an element of the offense defined by section 924(c)(1). The purpose of that argument is to avoid the heightened standard of harmless error review that we employ when the trial court

fails to instruct the jury on an element of the crime. *See Roy v. Gomez*, 81 F.3d 863, 866–67 (9th Cir.1996) (en banc).

We reject the government's contention, as applied to instances where the government seeks more than the minimum 5–year consecutive sentence. The entire purpose of our requiring a special verdict or separate charges in *Martinez* was that the jury find beyond a reasonable doubt that the defendant used a machine gun. If the 30–year consecutive sentence is to be imposed under section 924(c)(1), the fully automatic character of the firearm must be found by the jury; that is to say, it is an element of the crime.[4]

■ Because the jury in this case did not make a finding regarding this element of the offense, we employ the analysis recently set forth in *Roy v. Gomez*, 81 F.3d at 866–67. In *Roy*, we held that failure to provide the jury with an instruction on an element of a crime is subject to harmless error analysis, but under a very strict standard of harmlessness. *Id.* "[T]he omission is harmless only if review of the facts found by the jury establishes that the jury *necessarily* found the omitted element." *Id.* at 867.

■ Applying this standard, the omission of a specific jury finding in Alerta's case is not harmless. We follow the reasoning of the First Circuit in *United States v. Melvin*, 27 F.3d 710, 714 (1st Cir.1994). There, the court of appeals followed *Martinez* and *Sims* and held that the jury must find the firearm to be a machine gun or silencer to support a 30–year sentence under section 924(c)(1). The government in *Melvin* argued, as it does here, that a finding that the defendants used a machine gun was "implicit and inescapable" from the jury's verdict. *Id.* The First Circuit concluded, however, that under the factual circumstances presented in that case it could not exclude the possibility that the jury based its guilty verdict on the section 924(c)(1) charge on a determination that defendants possessed only a nonautomatic

---

**4.** Our conclusion is consistent with (but not compelled by) the fact that section 924(c)(1) defines a free-standing substantive crime, and is not merely a sentencing enhancement provision. *See United States v. Anderson*, 59 F.3d 1323, 1326 (D.C.Cir.) (en banc) (holding that predicate drug offense is an element of a section 924(c)(1) crime), *cert. denied,* —— U.S. ——, 116 S.Ct. 542, 133 L.Ed.2d 445 (1995). A section 924(c)(1) conviction can stand on its own even if a defendant is not charged with the underlying drug offense. *Id.*

handgun. *Id.* at 715. A handgun had been found in the front of the defendants' van, and a bag containing machine guns had been found in the back. The First Circuit pointed out that the trial court's instructions (like those in Alerta's case) emphasized that they could find defendants guilty by finding use of a single firearm. *Id.*

> Thus, the jurors might have suspended their deliberations on the use of firearms once they concluded that these experienced criminals must have carried at least a single gun—the handgun in the front seat—for use as a show of force or to discourage heroic efforts against them.

*Id.*

Similarly, we cannot say that the jury necessarily found that Alerta used or carried a machine gun, as opposed to one of the other weapons listed in the jury instruction, while committing a drug trafficking offense. The jury heard evidence regarding several different drug transactions involving several different weapons. Under the court's instructions, the jury's findings of guilt on the drug offenses did not *require* the jury to find that particular firearms were used in connection with those offenses. As in *Melvin,* the jury may have found it easy to conclude that one of the non-automatic guns was used in relation to one of the offenses, and to stop there. Thus, for all we can know, Alerta may have been sentenced to 30 years without a finding by the jury that he used or carried a machine gun. That we cannot permit, despite the very strong evidence that Alerta used or carried a machine gun. " '[T]he question is not whether guilt may be spelt out of a record, but whether guilt *has been found by a jury* according to the procedure and standards appropriate for criminal trials.' " *Roy,* 81 F.3d at 867 (quoting *Carella v. California,* 491 U.S. 263, 269, 109 S.Ct. 2419, 2422, 105 L.Ed.2d 218 (1989) (Scalia, J., concurring)). The jury has not inescapably found that Alerta used or carried a machine gun in relation to his drug trafficking crimes.

■ Alerta argues that, having reached this conclusion, we should vacate his 30-year sentence on Count 5 and remand with instructions to the district court to resentence

him to a 5-year consecutive term. He relies, again, on *Melvin,* 27 F.3d at 711–13. *Melvin* presented a very different situation, however. There the trial court had recognized its mistake in not securing a finding from the jury that the defendants had used machine guns. As a consequence, it sentenced the defendants only to a 5-year consecutive term under section 924(c)(1). The defendants made a conscious decision to withdraw their appeal of their section 924(c)(1) convictions and sentences. The First Circuit determined that the government's appeal was without merit because there was no jury finding to support a 30-year sentence. *Id.* at 714–15. In the absence of an appeal by the defendants, the section 924(c)(1) count could not be retried, and the convictions and 5-year sentences were therefore affirmed. *Id.* at 712–13.

Alerta, however, appealed both his conviction and his sentence under section 924(c)(1). He has succeeded in establishing error in the trial court's failure to submit separate charges or a special verdict form to the jury. He is accordingly entitled to a retrial. The government, however, is entitled to attempt on that retrial to obtain a procedurally correct conviction supporting a 30-year sentence. We have no difficulty finding that there was sufficient evidence for the jury to find that Alerta used or carried a machine gun; retrial is therefore permitted. *See United States v. Bibbero,* 749 F.2d 581, 586 (9th Cir.1984), *cert. denied,* 471 U.S. 1103, 105 S.Ct. 2330, 85 L.Ed.2d 847 (1985).

We accordingly reverse Alerta's conviction and sentence on the section 924(c)(1) count, and remand for retrial on that count. If the government should, on remand, elect to accept a 5-year sentence on Count 5, then the district court may reinstate the conviction and 5-year sentence. Otherwise, the government may proceed with a retrial of Count 5.

### C.

■ Alerta next contends that the jury instruction for Count 4, possession of methamphetamine with intent to distribute, was erroneous because it did not require the jury

to find the quantity of drug possessed.[5] He argues that the jury should be required to find, by instruction or special verdict, that he possessed more than ten grams of methamphetamine or more than 100 grams of a substance containing methamphetamine in order to support the sentence he received.

Alerta proposed the instruction that was given, and he did not propose a special verdict form. We therefore review at most for plain error. We find no plain error, and no serious effect on "the fairness, integrity or public reputation of judicial proceedings" that would call for reversal of Count 4. *See United States v. Olano*, 507 U.S. 725, 736, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993) (internal quotation omitted). Although Alerta was convicted under 21 U.S.C. § 960, we have held, under analogous provisions in 21 U.S.C. § 841(a), that the quantity of drugs is not an element of the offense but is a sentencing factor to be decided by the judge. *United States v. Sotelo–Rivera*, 931 F.2d 1317, 1319 (9th Cir.1991), *cert. denied*, 502 U.S. 1100, 112 S.Ct. 1186, 117 L.Ed.2d 428 (1992). We need make no definitive ruling concerning section 960; it is clear that there is no plain error. There was ample evidence that the conspirators dealt with more than 100 grams of a substance containing methamphetamine. We affirm the conviction on Count 4.

### D.

 Alerta contends that he was improperly charged and sentenced for both conspiracy to distribute methamphetamine and conspiracy to use firearms in a drug trafficking offense. He relies on *Braverman v. United States*, in which the Supreme Court stated that "one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one.... The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute, [18 U.S.C. § 371]....

For such a violation, only the single penalty prescribed by the statute can be imposed." 317 U.S. 49, 53–54, 63 S.Ct. 99, 102, 87 L.Ed. 23 (1942); *see also United States v. Licciardi*, 30 F.3d 1127, 1131 (9th Cir.1994) (holding that indictment is multiplicitous if it charges multiple conspiracies when there is only a single conspiracy to violate two statutes); *Launius v. United States*, 575 F.2d 770, 771 (9th Cir.1978) (per curiam) (holding that consecutive sentences imposed on multiplicitous counts—two counts of conspiracy for one drug smuggling enterprise—violated Double Jeopardy Clause).

Both as a matter of charges and of evidence, Alerta is correct that there was only one conspiracy. Alerta, his brother, and Charfauros together distributed methamphetamine and used firearms in the course of doing so. The actors were the same in both purported conspiracies, and the object was the same. Indeed, the only real evidence of an agreed use of firearms related to firearms that were bartered with drugs or used as collateral for drugs. There was simply no evidence of two conspiracies.

Under *Braverman* and our decision in *Launius*, then, Alerta would clearly be entitled to relief, even if he failed to move for dismissal of the indictment as multiplicitous. *See Launius*, 575 F.2d at 772 (failure to object to multiplicitous indictment does not waive double jeopardy objection to imposition of multiple sentences). There is a further complication, however, because *Braverman* is not the Supreme Court's last word on the subject.

In 1981, the Supreme Court decided *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). In that case it approved consecutive sentences for a conspiracy under 21 U.S.C. § 963 to import marijuana, and a conspiracy under 21 U.S.C. § 846 to distribute marijuana. The Court stated that the petitioners "were involved in *an* agreement, the objectives of which were to

---

**5.** The instruction given stated that the government must prove:

First, the defendant knowingly possessed methamphetamine.

Second, the defendant possessed it with the intent to deliver it to another person.

It does not matter whether the defendant knew that the substance was methamphetamine. It is sufficient that the defendant knew that it was some kind of a prohibited drug. *See* 9th Cir.Crim.Jury Instr. 9.04A (1995).

import marihuana and then to distribute it domestically." *Id.* at 335, 101 S.Ct. at 1140 (emphasis added). The Court rejected the argument that consecutive sentences could not be imposed when there was a single conspiracy. The Court distinguished *Braverman* because, in *Braverman,* both purported offenses were violations of the same statute. *Albernaz,* 450 U.S. at 339–40, 101 S.Ct. at 1142–43. When Congress had created two separate offenses that applied to a single multi-object conspiracy, the proper question was whether Congress intended that separate punishments be imposed for each offense. *Id.* at 337, 101 S.Ct. at 1141. In the absence of an express indication of congressional intent, the Court applied the test of *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Under *Blockburger,* Congress is deemed to have intended multiple punishments if each offense required proof of a fact the other does not. *Id.* at 304, 52 S.Ct. at 182. In *Albernaz,* the Supreme Court applied that test and found that one statute required proof of conspiracy to distribute and the other required proof of conspiracy to import. Thus the offenses were distinct and multiple punishments could be imposed. *Albernaz,* 450 U.S. at 339, 101 S.Ct. at 1142.

The Supreme Court again applied the *Blockburger* test in its recent decision in *Rutledge v. United States,* —— U.S. ——, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996). In *Rutledge,* the defendant had been convicted of engaging in a continuing criminal enterprise by acting in concert with others to distribute cocaine, in violation of 21 U.S.C. § 848. He had also been convicted of conspiracy, in violation of 21 U.S.C. § 846, on the basis of the same criminal agreement. He was given concurrent sentences on the two convictions. Because the same act violated two distinct statutory provisions, the Supreme Court applied the *Blockburger* test. *Id.* at ——, 116 S.Ct. at 1245. The Court concluded that, because the "in concert" element of the continuing criminal enterprise offense required

the same proof of agreement required by the conspiracy statute, the two offenses could not support multiple punishments. *Id.* at —— ——, 116 S.Ct. at 1246–47. The conspiracy statute required the proof of no fact in addition to the facts required to prove engagement in a continuing criminal enterprise. *Id.* The *Blockburger* presumption against multiple punishments controlled, because Congress had not clearly indicated that it intended multiple punishments. The mere fact that the conspiracy violated two separate statutory provisions was not enough to show such congressional intent, *id.* at —— n. 14, 116 S.Ct. at 1249 n. 14, nor could it be assumed that Congress intended to permit two convictions so that one could back up the other in case of a reversal of one conviction. *Id.* at —— —— ——, 116 S.Ct. at 1249–50.

The *Blockburger* test, then, is the key to the case before us. The Tenth Circuit, following *Albernaz,* applied that test to a case very much like Alerta's and concluded that multiple punishments were permitted. *United States v. Morehead,* 959 F.2d 1489, 1508–09 (10th Cir.1992), *reheard in part and aff'd. en banc sub nom. United States v. Hill,* 971 F.2d 1461 (10th Cir.1992). In *Morehead,* the Tenth Circuit upheld multiple sentences [6] for conspiracy to distribute marijuana in violation of 21 U.S.C. § 846, and conspiracy to use or carry firearms during and in relation to the distribution of marijuana in violation of 18 U.S.C. § 371. Although it described the circumstances as indicating that there was but one agreement, the Tenth Circuit applied the *Blockburger* test and held that each conspiracy required proof of a fact not required by the other: "count 1, the marijuana conspiracy, requires proof of an agreement to ... distribute marijuana. Whereas count 2, the firearms conspiracy, requires proof of an agreement to use or carry firearms during and in relation to the commission of the drug trafficking offense." *Morehead,* 959 F.2d at 1508. It therefore upheld both convictions and sentences.

---

**6.** Although in *Morehead* the two prison sentences for conspiracy were made concurrent, the Tenth Circuit addressed the multiplicity argument because separate $50 penalty assessments were imposed in connection with each sentence, and the

concurrent sentence had collateral consequences. *Morehead,* 959 F.2d at 1506. The Supreme Court later followed the same approach in *Rutledge,* —— U.S. at —— —— ——, 116 S.Ct. at 1247–48.

With all respect to the Tenth Circuit, we would not apply *Blockburger* in this manner to Alerta's case. As the Supreme Court pointed out in *Albernaz,* 450 U.S. at 337, 101 S.Ct. at 1141, the *Blockburger* test is to be applied to the statutory offenses, not to the conspiracies that are actually charged:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each *provision* requires proof of a fact which the other does not.

*Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182 (emphasis added); *see also Rutledge,* ―― U.S. at ――, 116 S.Ct. at 1245. "When applying this test, we focus upon the *statutory elements* of each offense." *United States v. Wolfswinkel,* 44 F.3d 782, 784 (9th Cir. 1995) (emphasis added).

In *Albernaz,* the *Blockburger* test was satisfied because the two conspiracy statutes themselves specified different objects of the conspiracy. Section 846 made it a crime to conspire "to commit any offense defined in this subchapter." Section 846 is part of Subchapter I—Control and Enforcement—of Chapter 13 of Title 21, U.S.Code. Section 963 similarly made it a crime to conspire "to commit any offense defined in this subchapter," but it is part of Subchapter II—Import and Export—of the same chapter. Thus conviction under each section requires proof of a fact not required for conviction under the other: section 846 requires proof of commission of a crime defined in Subchapter I, and section 963 requires proof of commission of a crime defined in Subchapter II.

It is an entirely different matter when one of the conspiracies is charged under 18 U.S.C. § 371. That statute makes it a crime to conspire "to commit any offense against the United States." A conspiracy charged under 21 U.S.C. § 846 requires proof of an agreement to commit a crime defined by Subchapter I, Chapter 13, Title 21. No additional fact is required to prove a violation of 18 U.S.C. § 371. The offenses are not distinct under the *Blockburger* test. We have found elsewhere no clear indication that Congress intended to impose multiple punishments. *See Rutledge,* ―― U.S. at ―――――, 116 S.Ct. at 1248–49. We therefore presume that Congress intended only one punishment when a single conspiracy violates the two statutory provisions. *See Missouri v. Hunter,* 459 U.S. 359, 366–67, 103 S.Ct. 673, 678–79, 74 L.Ed.2d 535 (1983); *Rutledge,* ―― U.S. at ――, 116 S.Ct. at 1250. Thus the charges against Alerta, which related to the same unitary agreement, were multiplicitous.

Alerta cannot be subjected to multiple punishment on multiplicitous charges. *See Launius,* 575 F.2d at 771. The conviction as well as the sentence on one of the two multiplicitous counts must be vacated, to "avoid 'both the punitive collateral effects of multiple convictions as well as the direct effects of multiple sentences.'" *United States v. Anderson,* 850 F.2d 563, 569 (9th Cir.1988) (quoting *United States v. Palafox,* 764 F.2d 558, 564 (9th Cir.1985) (en banc)); *see Rutledge,* ―― U.S. at ―――――, 116 S.Ct. at 1247–48.[7]

We therefore direct the district court to vacate the conviction and sentence on Count 2. We dispense with the conviction and sentence on Count 2 rather than Count 1 because the purported agreement to carry or use firearms was a subordinate part of the overall drug distribution scheme. In addition, the 30–year consecutive sentence imposed on Count 2 exceeds by 25 years the statutory maximum sentence permissible under 18 U.S.C. § 371; that statutory maximum caps the Guideline sentence. *See* U.S.S.G. § 5G1.1(a); *United States v. Conley,* 92 F.3d 157, 164–65 (3d Cir. 1996). We therefore conclude that the conviction and sentence on Count 2 is to be vacated. As a

―――――――

7. Because we conclude that the multiple convictions cannot stand, we need not address the government's argument that the two conspiracy sentences were not truly consecutive because they were merged into the sentences for the substantive crimes, with which they were made concurrent.

We note in passing that the conspiracy sentence on Count 2 was not properly made concurrent with the sentence on the section 924(c)(1) count, Count 5. Section 924(c)(1) specifies that the sentence imposed under that subsection may not "run concurrently with any other term of imprisonment."

consequence, we find it unnecessary to address Alerta's other challenges to his conviction on Count 2.

## IV.

We conclude that, to subject Alerta to a 30-year sentence under 18 U.S.C. § 924 for using a machine gun during and in relation to a drug trafficking crime, the fully automatic nature of the firearm is an element that must be found as a fact by the jury. Because the jury did not inescapably so find, we reverse Alerta's conviction on Count 5, and remand that count for retrial. If the government elects to accept a 5-year consecutive sentence under section 924(c)(1), the district court may reinstate the conviction and impose the 5-year consecutive sentence; otherwise the government may proceed with retrial on Count 5.

We also conclude that Alerta's convictions on Counts 1 and 2 violated the protection against double punishment embodied in the Double Jeopardy Clause. The two violations constituted but a single offense. We therefore remand to the district court to vacate Alerta's conviction and sentence on Count 2.

We affirm the convictions and sentences on Counts 1, 3 and 4.

**REVERSED IN PART; AFFIRMED IN PART; AND REMANDED WITH INSTRUCTIONS.**