**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 02-1028

UNITED STATES OF AMERICA,

Appellee,

v.

BASILIO INIRIO-CASTRO,

Defendant, Appellant.

No. 02-1029

UNITED STATES OF AMERICA,

Appellee,

v.

ISIDRO ROSARIO,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, U.S. District Judge]

Before

Torruella, Circuit Judge,
Coffin, Senior Circuit Judge,
and Selya, Circuit Judge.

Zygmunt G. Slominski, by Appointment of the Court, on brief for appellant Inirio-Castro.

H. Manuel Hernandez, by Appointment of the Court, for appellant Rosario.

Jared Lopez, Assistant United States Attorney, with whom H. S. Garcia, United States Attorney, Sonia I. Torres-Pabon and Nelson Perez-Sosa, Assistant United States Attorneys, were on brief, for appellee.

March 31, 2003

**COFFIN, Senior Circuit Judge**. These are two appeals from judgments of conviction for possession of more than five kilograms of cocaine, with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Each of the defendants, Basilio Inirio-Castro and Isidro Rosario, has raised a challenge to the sufficiency of the evidence. Inirio-Castro also asserts a separate issue based on the alleged inconsistency between the jury's general verdict and its answer to a special interrogatory that Inirio-Castro claims was improperly submitted to the jury.

Despite an able and spirited defense in both cases, we affirm.

Both appellants and the government agree, as do we, that our task in evaluating sufficiency is to consider whether all the evidence, circumstantial as well as direct, taken in the light most favorable to the prosecution, including reasonable inferences, enables a rational jury to reach a judgment of guilty beyond a reasonable doubt. See, e.g., United States v. Ortiz de Jesus, 230 F.3d 1,5 (1st Cir. 2000). Appellants, however, argue that this is a case where the evidence for and against guilt is so nearly equal that a reasonable jury could not have found guilt beyond a reasonable doubt. See United States v. Morillo, 158 F.3d 18, 22 (lst Cir. 1998). But, as Morillo and the case law on which it relies make clear, all the evidence – that pointing to innocence as well as that pointing to guilt – must be reviewed in the light most

favorable to the prosecution.  Id.  With this in mind, we set forth the essentials.

On September 5, 2000, appellant Inirio-Castro returned from visiting family members in the Dominican Republic and, with his cousin, appellant Rosario, left at a little after 6 p.m. from Fajardo on the east coast of Puerto Rico ostensibly to go fishing. Their destination was the area of Las Paulinas beach, between Luquillo and Fajardo.

At about 9:30 p.m., a U.S. Customs officer using aircraft infrared radar spotted a small boat powered by twin outboards, showing no running lights but bearing two individuals, moving slowly some 50 to 75 feet from shore.  He maintained radar contact with this vessel as it moved further away from the beach.  Turning his attention to the beach, he observed people moving large packages away from the shoreline, and others moving packages toward a van.  Later in the evening, a police officer on land discovered eight bales of cocaine on the beach and, the next morning, seventeen more bales were found near the truck.

Meanwhile, a unit of the Puerto Rico Rapid Action United Forces pursued the target vessel and boarded it at about 11 p.m., about one half to three quarters of a mile off shore.  It was anchored but showed no anchor light; the two occupants were apparently fishing.  It had started raining intensely.  There was some fishing gear aboard (two rods, a reel, ten to fifteen bait

-4-

fish) but no weights, nets, fishing flyers, or gloves . . . and no caught fish. The boat bore a Virgin Islands registration and both appellants had fishing licenses. Inirio-Castro said that he earned from $1000 to $3000 a month from fishing. The boat carried no cell phones, radios, GPS (Global Positioning System) or other navigational aid, and no firearms. Appellant Rosario was found to have sand in his pocket and the two appellants were carrying cash totaling almost $1000.

A gaff, used to land fish and retrieve other objects from the water, was found to have a white powdery substance on its tip. This was subjected to a field test and reacted positively to cocaine. Fourteen of the twenty-five bales were found to have been punctured or pierced by a sharp object. White plastic burlap strips found on the gaff, under a seat, around wiring, tubing, hoses, battery line, and engine were given laboratory testing, which revealed similar physical and chemical characteristics to those on five bales found on the beach.

Appellants seek to characterize their case as one of equal or near equal weight to that of the prosecution, making the following arguments. They point out that they were not at the beach, that others could have delivered the packages, and that they were being prosecuted for "mere presence." They point out that the only special equipment on the boat was consistent with fishing, the boat carried a registration, both appellants had valid fishing licenses,

no equipment associated with drug smuggling was on board, and that, unlike an outlaw boat, the vessel was proceeding very slowly. Finally, field tests were known sometimes to register "false positive" results and the white plastic strips had not been subjected to the further lab analysis that could positively identify them as coming from the bales on the beach.

Without in any way denigrating the efforts and competence of appellants' counsel, we think that there are just too many bridges to cross and too many assumptions to be made for these observations and arguments to rise to the point where we could say that a rational jury must have a reasonable doubt. The temporal and spatial proximity of the boat and the beach operations may not be conclusive, but it is significant, particularly in the absence of evidence suggesting any other source of delivery of the bales. A reasonable jury might question the presence, so close to shore, in a reef-surrounded area, of a boat bent solely on fishing. It might also find significance in the fact that sand was found in one appellant's pocket.

A rational jury might also question the likelihood of appellants fishing for several hours and, without any visible success, continuing despite heavy rain. And it might further give considerable weight to the positive reaction of the field test on the gaff and the chemical and physical comparability of the strips found on the vessel to materials from the bales, even though

testing for a positive identification of source was not undertaken. Finally, it might also infer that the holes punched in the bales had, in the absence of other explanation, been made by the gaff.

We therefore conclude that the judgments of conviction are supported by sufficient evidence.

What remains is Inirio-Castro's argument that the verdicts are vulnerable based on the special interrogatory answered by the jury. The facts relevant to this issue are the following.  During the trial, the jury was read a stipulation signed by all parties that the twenty-five bales seized on the beach, after chemical analysis, had been found to contain more than 150 kilograms of cocaine.  When the case was given to the jurors, they received a verdict form. There were two items requiring jury action.  The first was registration of its finding of guilt or acquittal:

WE, THE JURY, FIND DEFENDANT: [NAME]

_____    as charged in COUNT ONE of the
                       Indictment
   GUILTY/NOT GUILTY

Count One of the Indictment described the offense as possession with intent to distribute five kilograms or more of cocaine.

Secondly, at the bottom of the form was this instruction and question:

If you find the defendant guilty, then proceed to answer the following question:

> Do you find that the amount of cocaine involved in the offense charged was in an amount of 150 kilograms or more?

> _____          _____

>        YES                      NO

The jury returned the form with "Guilty" in the blank of the first item and "No" as the answer to the question. Appellant Inirio-Castro contends that submitting this question and permitting this answer amounts to a constructive amendment of the indictment, violating both the Grand Jury Clause of the Fifth Amendment and the Sixth Amendment requirement of a jury verdict. He further argues that the response invalidates the verdict of guilty, signifying a rejection of all the evidence of the twenty-five bales on the beach.

The argument relies on our decision in United States v. Spock, 416 F.2d 165 (1st Cir. 1969), where we underscored the general inappropriateness of submitting special questions in criminal cases. In that case, ten special questions were put to the jury, resulting "in a progression of questions each of which seems to require an answer unfavorable to the defendant, [leading] a reluctant juror . . . to vote for a conviction which, in the large, he would have resisted." Id. at 180-82.

We recognized, however, the existence of an exception for cases in which "the determination of a particular fact will be crucial to sentencing," id. at 182 n.41. We have subsequently made it clear that there is no "mechanical per se rule of

unconstitutionality . . . for all special questions in criminal cases," Heald v. Mullaney, 505 F.2d 1241, 1245 (1st Cir. 1974). We have also reaffirmed our recognition that special questions may be permissible in federal criminal proceedings, "usually in connection with sentence," id. We have noted the existence of this genre of cases specifically in connection with firearms prosecutions where the severity of sentence would be related to the specific firearm possessed by a defendant. See United States v. Ellis, 168 F.3d 558, 562 n.2 (1st Cir. 1999); United States v. Melvin, 27 F.3d 710, 716 (1st Cir. 1994).

We think the special question asked in this case was of this nature. The court apparently was seeking what it thought was necessary guidance under Apprendi v. New Jersey, 530 U.S. 466 (2000), to determine a fact crucial to sentencing. Moreover, we can see no reasonable possibility of prejudice. The jury had registered its finding that defendants had possessed over five kilograms of cocaine with the intent to distribute. This finding obviously stemmed from the evidence of the twenty-five bales and the stipulation that they contained more than 150 kilograms. Now the jury was being given an opportunity to limit responsibility to a lower amount. This choice clearly benefitted appellants, since the court, while recognizing that it could impose sentence based on a much higher quantity of cocaine, respected and followed the jury's finding in his sentencing calculations.

Appellants, however, urge that the answer to the special question implied a rejection of all the evidence of bales found on the beach, leaving only the evidence of a trace of cocaine on the gaff - enough only to justify conviction for simple possession. This leap of reasoning assumes that the jury was not only reneging on its verdict of guilt for possession of more than five kilograms with intent to distribute, but also was ignoring the comparability of materials found in the boat and on the beach, the punctured bales, the actions of appellants in the boat, and the absence of any other explanation for the trace of cocaine found on the gaff. We do not think that this collection of assumptions falls within the range of the rational.

We therefore conclude that the special question and the jury's answer did not invalidate the verdict.

<u>Affirmed</u>.