**UNITED STATES, Appellee,**

v.

**Boyd Vance ELLIS, Defendant, Appellant.**

No. 98–1482.

United States Court of Appeals, First Circuit.

Heard Jan. 7, 1999.

Decided Feb. 26, 1999.

how many miles the CORSICA could travel.

Jeffrey M. Silverstein with whom Billings & Silverstein was on brief for appellant.

Margaret D. McGaughey, Assistant United States Attorney, with whom Jay P. McCloskey, United States Attorney, and Michael Love, Assistant United States Attorney, were on brief for appellee.

Before SELYA, Circuit Judge, CUDAHY,* Senior Circuit Judge, and STAHL, Circuit Judge.

STAHL, Circuit Judge.

Defendant-appellant Boyd Ellis challenges certain aspects of his trial and sentencing after his conviction on firearms possession and marijuana cultivation charges. We affirm Ellis's conviction, but vacate the sentence and remand to the district court for resentencing.

## I. Facts

Acting on information supplied by various confidential informants, as well as on limited corroborative police investigation, state and federal agents obtained a search warrant for Ellis's home and attached property. The agents located approximately sixty-five marijuana plants in a secret compartment in a detached garage. From various locations on the property, the agents also recovered ammunition of various types, some of which did not fit any of the weapons found on the premises. The search also discovered a shotgun and a handgun hidden in a bureau in Ellis's bedroom. Two additional weapons were recovered from the kitchen and garage, but Ellis was not charged with their possession.

Ellis was indicted for (1) knowing possession of an unregistered shotgun, *see* 26 U.S.C. §§ 5861(d), 5871; (2) being a felon in knowing possession of the shotgun, the revolver, or the ammunition, *see* 18 U.S.C. § 922(g)(1); and (3) cultivating marijuana, *see* 21 U.S.C. § 841(a)(1), 841(b)(1)(C).

At a jury trial, Ellis admitted his role in the marijuana cultivation in opening argument and again during his own testimony. Ellis contested only the intent element of his firearms convictions. He sought to introduce evidence that in 1991, during a prior search of his property by agents of the Maine Bureau of Intergovernmental Drug Enforcement (BIDE), Ellis, a prior convicted felon, had inquired about the legality of the ammunition he then possessed. Ellis testified that a BIDE officer told him he would get back to him about the issue. No one ever did. Ellis sought to testify that, on the basis of this failure to get back to him, he reasonably concluded that the possession of the ammunition was legal, notwithstanding his status as a convicted felon. The court refused to admit this evidence of—or to instruct the jury on—the defense of entrapment by estoppel. Although Ellis requested such an instruction at a charge conference, he failed to object after the instructions were given.

Also at trial, Ellis requested that a special verdict form be used in Count II, in order to determine which items (shotgun, revolver, or ammunition), if any, the jury agreed that he had knowingly possessed. The government did not oppose the request, but the district court nevertheless denied it. The jury convicted Ellis on Counts II and III, but acquitted on Count I.

At sentencing, the court explicitly found that Ellis had knowingly possessed the revolver, as well as the uncharged weapons. On the basis of prior convictions dating from

---

* Of the Seventh Circuit, sitting by designation.

1975–1983, and on its findings regarding the weapons, the district court increased the base offense level pursuant to the sentencing guidelines provisions associated with being an armed career criminal, *see* U.S.S.G. § 4B1.4, which in this case trumped the normal guidelines calculations. Finally, the court chose the higher of two potentially applicable armed career criminal base offense levels. *See* U.S.S.G. § 4B1.4(b)(3)(A). The level the court selected was applicable to defendants found to have been in possession of firearms "in connection with another felony." *Id.* Ellis was sentenced to, *inter alia*, 262 months' imprisonment.

## II. Trial

On appeal, Ellis challenges various aspects of his trial and sentencing. We begin with the trial challenges.[1] First, Ellis claims the district court erred by excluding evidence of the 1991 search and by refusing to instruct the jury on the defense of entrapment by estoppel. Second, he contends that the district court should have granted his request for a special verdict form for the jury. Neither of these arguments is persuasive.

### A. Entrapment by Estoppel

 We review a district court's decision to exclude evidence for abuse of discretion. *See United States v. Tierney*, 760 F.2d 382, 387 (1st Cir.1985). We review *de novo* whether a defense is established as a matter of law. *United States v. Caron*, 64 F.3d 713, 715 (1st Cir.1995). We review for plain error a district court's failure to instruct the jury on a defense, where the instructions were not the subject of a proper objection at trial. *See Johnson v. United States*, 520 U.S. 461, 466, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997).

 Entrapment by estoppel requires Ellis to establish (1) that a government official told him the act was legal; (2) that he relied on the advice; (3) that the reliance was reasonable; and (4) that, given the reliance,

prosecution would be unfair. *See United States v. Smith*, 940 F.2d 710, 715 (1st Cir. 1991).

 We agree with the district court that the evidence Ellis sought to introduce to establish entrapment by estoppel was insufficient as a matter of law to permit the jury to find for him on this point. Ellis's evidence consisted of testimony that in 1991, during a search of his property by BIDE, he inquired about the legality of the ammunition he possessed. One official allegedly told Ellis that the official would get back to him. No one ever did. Ellis testified that he relied on this failure to get back to him, thus reasonably concluding that the possession of the ammunition was legal.

Ellis failed to show, as required, that anyone with official status made an affirmative representation that possession of the ammunition was legal. *See id.* Because the proffered evidence was insufficient, the district court was well within its discretion in excluding the evidence. Obviously, in such circumstances, there was no plain error in refusing to instruct the jury on the defense.

### B. Special Verdict Form

 Ellis contends that the district court erred in not giving the jury a special verdict form regarding Count II. Such a form would have enabled the district court to determine which, if any, of the firearms and ammunition the jury found Ellis to have knowingly possessed. In denying the request, the district court expressed worry that such a form would encourage the jury to return with a compromise verdict. According to Ellis, this alleged error became critical at sentencing, when the district court did not have the jury's guidance on which, if any, of the charged items it had found Ellis knowingly possessed.

---

1. In addition to the arguments discussed in the text of this opinion, Ellis also argues that there was no probable cause to support issuing the search warrant. In a footnote, he asserts but does not argue that the "good faith" exception is not applicable. Regardless of the probable cause issue, the "good faith" exception clearly would

apply here. *See United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Ellis's argument to the contrary is plainly without merit and, in any case, having failed to present developed argument, Ellis has forfeited the issue. *See King v. Town of Hanover*, 116 F.3d 965, 970 (1st Cir.1997).

■ This court has not adopted a standard of review on this issue. At least one other circuit has reviewed the failure to use a special verdict form for abuse of discretion. *See, e.g., United States v. Reed,* 147 F.3d 1178, 1180 (9th Cir.1998). Noting that special verdicts in criminal cases are generally disfavored, *see United States v. Spock,* 416 F.2d 165, 180–83 (1st Cir.1969), and following the Ninth Circuit's lead, *see Reed,* 147 F.3d at 1180, we adopt this standard. *Cf. United States v. Melvin,* 27 F.3d 710, 716 (1st Cir. 1994) (holding that trial court *may* use a special verdict in cases similar to the one at bar).

Ellis has not explained how knowing precisely what the jury found beyond a reasonable doubt would have aided his cause before the district court at sentencing, where a lower burden of proof applies, *see McMillan v. Pennsylvania,* 477 U.S. 79, 91, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). In these circumstances, the district court is not bound by the jury's conclusions (even if they were knowable with the certainty Ellis ascribes to them). *See United States v. Mocciola,* 891 F.2d 13, 17 (1st Cir.1989). In addition, we share the district court's concern that the special verdict form sought here might have encouraged a compromise verdict. *Cf. Spock,* 416 F.2d at 182 (noting danger that juror who may otherwise have wished to acquit will be led to convict on account of special verdict form). Accordingly, we discern no abuse of discretion in the district court's failing to have used a special verdict form for Count II.[2]

### III. Sentencing

Ellis raises four arguments in his sentencing appeal. First, he claims that the district court made conflicting factual findings that were not supported by the evidence. Second, he protests the use of "ancient" convictions to trigger the armed career criminal enhancement. Third, he contends that the district court erred by increasing his base offense level for possession of firearms "in connection with another felony." Finally, he argues that he was entitled to a base offense

level reduction for acceptance of responsibility. We address these points *seriatim.*

### A. Factual Findings Regarding the Possession of Firearms

■ In order to invoke the guidelines associated with armed career criminals, the district court found by a preponderance of the evidence that Ellis knowingly possessed the handgun, ammunition, and two other uncharged weapons. We review a district court's factual findings for clear error. *See* Fed.R.Civ.P. 52(a). Ellis argues that because the shotgun and the handgun were both found in the same place, logic requires that the district court find *either* that Ellis knowingly possessed both, *or* that he knowingly possessed neither. Because the district court found only knowing possession of the handgun, Ellis invites this court to find clear error. We decline the invitation.

First, the court need not have made any finding regarding the handgun. As Ellis admitted in a presentencing conference, the armed career criminal guideline to which this finding was relevant is satisfied by either a firearm *or* ammunition. *See* U.S.S.G. § 4B1.4(b)(3)(A). It is uncontested that Ellis knowingly possessed ammunition. Second, we point out that the district court made no finding at all regarding the shotgun; rather, the court simply declined to consider it. Thus, the inconsistency to which Ellis points does not exist. Finally, even if we were to treat the district court's failure to consider the shotgun as an implicit finding that Ellis did not knowingly possess it, a decision to treat the shotgun and the handgun differently is amply supported by the evidence. Although both the shotgun and the handgun were recovered from the bureau, the shotgun was dusty, while the handgun was clean. The shotgun was old, while the handgun was newer. The handgun, as opposed to the shotgun, was well-maintained. The shotgun was in a holster and the handgun was not. In fact, a holster into which the handgun fit was found in a more accessible drawer. Most importantly, there was testimony that a shell found on the premises had actually been

---

**2.** Of course, in circumstances like these, a district court has discretion to use special verdict forms, should it so decide. *See United States v. Melvin,* 27 F.3d 710, 716 (1st Cir.1994).

fired from the handgun. Based on these relevant differences, there is no clear error.

### B. Armed Career Criminal Status

■ Ellis argues that his prior convictions are too old to trigger enhancements under the guidelines associated with armed career criminals. However, he acknowledges that this court has ruled that the age of such convictions is irrelevant for this purpose. *See United States v. Daniels,* 3 F.3d 25, 28 (1st Cir.1993). Absent circumstances not present here, this panel does not have the power to overturn that ruling, *see Williams v. Ashland Engineering Co.,* 45 F.3d 588, 592 (1st Cir.1995).

### C. "In Connection With"

■ We review the district court's application of a particular sentencing guideline *de novo, see United States v. Thompson,* 32 F.3d 1, 4 (1st Cir.1994), although factual findings underlying the application are reviewed only for clear error, *see id.*

■ Ellis argues that there was an insufficient nexus between the possession of the firearms and the marijuana cultivation. For this reason, he argues that the district court erred in using U.S.S.G. § 4B1.4(b)(3)(A) to enhance his offense level for possession of firearms "in connection with" a controlled substance offense.

In this case, the guideline relevant to armed career criminals controls. *See* U.S.S.G. § 4B1.4(b). In relevant part, it provides for a base offense level of 34 "if the defendant used or possessed the firearm or ammunition *in connection with* a ... controlled substance offense." U.S.S.G. § 4B1.4(b)(3)(A) (emphasis added). If not, the applicable level is 33. *See* U.S.S.G. § 4B1.4(b)(3)(B). In addition, the "in connection with" finding raises Ellis's criminal history category from I to VI. *See* U.S.S.G. § 4B1.4(c)(2). Here, the district court used the 34 base level and category VI, apparently because it found the requisite "connection." The district court did not, however, make any explicit findings on this issue.

■ Although the phrase "in connection with" should be construed broadly, there must exist a causal or logical relation or sequence between the possession and the related offense. *See Thompson,* 32 F.3d at 5. Mere coincidental possession does not establish the required connection. *See id.* at 6. However, if the possession has "the potential to aid or facilitate" the other crime, that is sufficient. *Id.*

Here, the two charged weapons were located in a building separate from the marijuana operation. They were under a bureau, in a small room in which, by the government's own admission, it was difficult to shift furniture. In short, they were largely inaccessible, which weighs against finding a "connection."

Nevertheless, the government makes two sets of arguments—one in its brief and one at oral argument—which it says would permit us to affirm the district court's implicit finding of a "connection." In its brief, the government points to the following evidence as supporting the district court's conclusion that there was sufficient evidence to find such a nexus: (1) the fact that 80% of drug crimes in Maine also involve firearms violations; (2) the fact that Ellis cultivated his crop hidden from plain view; (3) the fact that marijuana is worth $2,000 per pound on the street. At oral argument, the government suggested that the two additional uncharged weapons found in the garage and kitchen respectively could support an "in connection with" finding. It also suggested that the sheer number of weapons on the property (four) supports an inference of a connection.

Combined with the fact that the charged guns and random ammunition were both inaccessible and nowhere near the marijuana alleged to be protected by them, the three items of "evidence" to which the government alludes in its appellate brief are not sufficient for us to affirm the district court's implicit finding of a "connection." The first item has nothing to do with Ellis and, in any event, would always apply, whether possession was coincidental or not, in derogation of *Thompson.* The second item only reflects the fact that marijuana is illegal; it is unclear what relevance the marijuana's being hidden has to the guns. In regard to the third item, the

government's recitation of the street value of marijuana adds nothing to the analysis; again, drugs have significant value on the street even when the firearms possession is merely coincidental to the drug operation. The third point is particularly unpersuasive on the facts before us, where the total amount of marijuana recovered from the cultivation operation—thirty-six-and-one-half grams—was worth approximately $160, using the government's estimate (.0365g X 2.2 lbs. /kg X $2000/lb.).

The government's suggested "connections" at oral argument are perhaps marginally more persuasive. In the absence of any explicit findings by the district court to support the government's position, however, and in light of the fact that at sentencing the government specifically declined to provide any evidence with regard to the additional uncharged weapons, we vacate Ellis's sentence and remand for resentencing consistent with this opinion.[3]

### D. Acceptance of Responsibility

■ Ellis also argues that he was entitled to a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. His acceptance purportedly consisted of his counsel's admission of Ellis's guilt on the marijuana charge in opening argument, his own testimony to the same effect, and the fact that he challenged only the intent element of the firearms charges. The district court declined to award the reduction. The district court's reasoning is not entirely clear; it relied on Application Note 2 to U.S.S.G. § 3E1.1. This Note gives, *inter alia*, examples of cases where a defendant may elect to go to trial and yet still receive a reduction for acceptance of responsibility. The sentencing transcript suggests that it is possible the district court believed that because Ellis's trial issues were not related to jurisdiction or constitutionality, the latter of which is an example offered in Application Note 2, Ellis was not eligible for the reduction.

■ In "rare situations", a defendant may elect to exercise his right to trial and

still be eligible for a reduction under U.S.S.G. § 3E1.1. *See* Application Note 2. These rare situations are not limited, however, to jurisdictional and constitutional matters. *See, e.g.,* U.S.S.G. § 3E1.1 Application Note 2 (offering example of defendant who challenges applicability of a statute to his conduct); *Isabel v. United States,* 980 F.2d 60, 65 (1st Cir.1992) (acknowledging that where a defendant admits his conduct and denies only that it constitutes money laundering under the relevant statute, he may be eligible for an acceptance of responsibility reduction) (dicta); *United States v. Barris,* 46 F.3d 33, 35 (8th Cir.1995) (assertion of insanity defense at trial not an automatic bar to reduction for acceptance of responsibility). In some cases, defenses relating to intent may yet qualify for the acceptance of responsibility reduction. *See, e.g., United States v. Fleener,* 900 F.2d 914, 918 (6th Cir.1990) (defendant's going to trial to raise entrapment defense does not preclude award of reduction for acceptance of responsibility); *but see United States v. Kirkland,* 104 F.3d 1403, 1405 (D.C.Cir.1997) (sharply criticizing *Fleener* and holding that intent-based defenses are contests over factual guilt and thus not qualified for the reduction). In all cases, "a determination that a defendant has accepted responsibility will be based primarily upon *pre-trial* statements and conduct." U.S.S.G. § 3E1.1 Application Note 2 (emphasis added).

Although this record indicates that Ellis has an uphill battle in showing his eligibility for the acceptance of responsibility credit, *cf. United States v. Crass,* 50 F.3d 81, 84 (1st Cir.1995) ("*[I]ntent,* like any other element of the crime charged, may not be contested by the defendant without jeopardizing a downward adjustment for 'acceptance of responsibility.'") (emphasis in original); *United States v. Bennett,* 37 F.3d 687, 697 (1st Cir. 1994) (defendant who contested the issue of intent at trial and only expressed remorse after trial is not eligible for a reduction for acceptance of responsibility), nonetheless the district court should determine the matter in

---

**3.** We leave it up to the district court to determine whether the enhancement should be applied, but

either way, explicit findings need to be made.

the first instance or at least clarify its prior reasoning for denying the reduction, if it has occasion to address the issue on resentencing.[4]

### IV. Conclusion

Ellis's conviction is *affirmed*. His sentence is *vacated*, and the case *remanded* to the district court for resentencing.

4. If the district court finds no "connection" between the firearms possession and the marijuana cultivation, it should then also address the acceptance of responsibility issue. *See* U.S.S.G. § 4B1.4(b)(3)(B).