# United States Court of Appeals
## For the First Circuit

No. 08-1385

UNITED STATES,

Appellee,

v.

ALTON SHERMAN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin and Stahl, Circuit Judges.

Virginia G. Villa for appellant.
Margaret D. McGaughey, Appellate Chief, with whom Paula D. Silsby, United States Attorney, was on brief, for appellee.

December 22, 2008

**STAHL, Circuit Judge.** Defendant-Appellant Alton Sherman appeals his conviction for possession of a firearm in furtherance of a drug trafficking crime, a violation of 18 U.S.C. § 924(c)(1)(A). He primarily argues the evidence was not sufficient to support the verdict. He also objects to the manner in which the Magistrate Judge conducted voir dire and to the jury instructions given at the close of evidence. Finding no error, we affirm the conviction.

## I.

"We recite the facts in the light most favorable to the verdict." United States v. Garcia-Alvarez, 541 F.3d 8, 11 (1st Cir. 2008).

In May 2002, the Piscataquis County Sheriff's Office began an investigation after discovering two plots of land used for the development of marijuana gardens in a remote section of the county. Law enforcement periodically surveyed the locations and observed potting soil, peat moss, and other items consistent with marijuana cultivation. On June 7, aerial photographs confirmed that over 80 marijuana plants had been transplanted to a clearing and enclosed with logs to form a raised bed. Also in early June, officers came upon Richard Rodrigue driving a pickup truck near the clearing and traced his truck to a camp on Schoodic Lake. Officers later observed Rodrigue driving an ATV loaded with potting soil

-2-

near the clearing. Based on this information, the Sheriff's Office obtained a warrant to search the camp.

On June 11, 2002, at 9:00 a.m., five law enforcement officers executed the search warrant at the Schoodic Lake camp in Brownville, Maine, occupied by Defendant-Appellant Sherman. Upon entering the small house through unlocked front and back doors, the officers immediately smelled marijuana and then discovered approximately 500 immature marijuana plants, ranging from seedlings to plants three to four feet in height. In the twelve-by-twelve-foot living room, on top of a stereo speaker, they found an unloaded .32 caliber handgun next to a loaded clip of ammunition. The officers asked Sherman, who had been sleeping in a loft above the living room, and Rodrigue, who had been sleeping in the living room, whether additional guns were in the house. Sherman alerted the officers to a lunch box on a dresser in the living room. Inside, the officers found a 9-millimeter semiautomatic pistol with two magazines and a loaded ammunition clip. The pistol's serial number had been obliterated. Both guns were located within six to eight feet of the center of the living room. In the loft, the officers found a box of 9-millimeter ammunition next to the mattress where Sherman had been sleeping. The officers had never come across either guns or security devices at the two surveyed locations in the woods, and at trial, Deputy Sheriff George

McCormick agreed that the principal protection of the drugs and equipment was "just that they were in the middle of nowhere."

Sherman and Rodrigue were indicted on the following counts: Count One -- conspiracy to possess marijuana with intent to manufacture and distribute in violation of 21 U.S.C. § 841(a)(1); Count Two -- the manufacture and possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; Count Three -- possession of firearms in furtherance of the drug trafficking crimes in violation of 18 U.S.C. § 924(c)(1)(A); and Count Four -- possession of a firearm with an obliterated serial number in violation of 18 U.S.C. §§ 922(k), 924(a)(1). The district court granted mutual severance requests, and in addition to agreeing to forfeiture of property under 21 U.S.C. § 853(p), Sherman pled guilty to all counts except Count Three, possession of a firearm in furtherance of a drug trafficking crime, choosing to go to trial on that issue.

During jury selection, the Magistrate Judge declined to ask a list of voir dire questions advanced by Sherman. Instead, for more than 90 minutes, the Magistrate Judge asked prospective jurors about their knowledge of the criminal incident, associations or relationships with the participants or witnesses, prior involvement with the criminal justice system, contacts with law enforcement officers or substance abusers, and feelings about firearms. The Magistrate Judge also informed the venire pool of

the duty "to apply the law as given to you by the judge" and asked whether any of the prospective jurors would be unable to follow the district court judge's instructions " on various legal principles." Four jurors were excused for cause, two because of connections to or attitudes toward drug users, one for scheduling problems, and one for connections to police officers and feelings about guns. At sidebar, Sherman requested the Magistrate Judge additionally inquire into the venire's ability to follow a list of seven rules of the criminal justice system including the government's burden of proof and the presumption of innocence. The Magistrate Judge refused to read Sherman's list, stating, "I ask them if they're willing to follow the law as instructed by the court . . . And I leave it to the court . . . to instruct on the law," and later, "I don't know where to draw the line. There are many legal principles that I could instruct them on, and it's not my job here at voir dire to instruct them on the ones you've picked out."

A two-day jury trial commenced in September 2007.[1] At the charge conference, the district court told the parties it planned to list factors the jury could consider when reaching a verdict including the type of weapons involved, their proximity to the drugs, the legality or illegality of their possession, whether they were loaded, and whether their location suggested means of

---

[1] Sherman presented his defense through the cross-examination of government witnesses. He did not testify or call witnesses on his behalf.

defense or deterrence. The court stated that he would charge the jury that mere presence of firearms was insufficient to convict under § 924(c); instead, specific facts were needed tie Sherman to the firearms and show they were possessed to advance criminal activity. Planning to rely on United States v. Felton, 417 F.3d 97 (1st. Cir 2005), cert. denied, 547 U.S. 1048 (2006), the court explained it would counsel the jury that the difference between mere presence and illegal presence was a matter of degree and circumstance.

Sherman requested an instruction that there was no evidence that the guns were possessed to help grow or sell marijuana despite their constructive possession at the camp. The court declined the request, finding it effectively ordered a judgment of acquittal.

Permitting the jury to read along, each having a copy of the instructions, the court reminded the jurors to apply the law as explained by the court and listed the constitutional protections Sherman enjoyed as a criminal defendant. The court then explained that to convict, the jury must find a "sufficient nexus" between the guns and the criminal activity, see United States v. Robinson, 473 F.3d 387, 399 (1st Cir. 2007), and listed the previously discussed factors that might assist the jury. The court explained, "By referring to these factors, I am making no comment on the evidence itself." At sidebar, Sherman objected to the long

explanation and again requested his submitted jury instruction. After 90 minutes of deliberation, the jury returned a verdict of guilty.[2]

**II.**

We consider the following issues on appeal: (1) whether the evidence was sufficient to support the verdict, (2) whether the Magistrate Judge appropriately conducted voir dire, and (3) whether the district court's jury instructions on the main issue were sound.

Different standards of review apply to these separate inquiries. Because Sherman preserved his sufficiency challenge, we review the evidence de novo, considering "all the evidence, direct and circumstantial, in the light most favorable to the prosecution, drawing all reasonable inferences consistent with the verdict, and avoiding credibility judgments, to determine whether a rational jury could have found the defendant guilty beyond a reasonable doubt." United States v. Baltas, 236 F.3d 27, 35 (1st Cir. 2001) (citations omitted). "We draw all reasonable evidentiary inferences in harmony with the verdict and resolve all issues of credibility in the light most favorable to the government." United States v. Grace, 367 F.3d 29, 34 (1st Cir. 2004) (quoting United

---

[2] Sherman was sentenced to a mandatory minimum of 60 months on Counts One and Two and a term of 60 months on Count Four, all to run concurrently with each other, but consecutively to the mandatory minimum of 60 months for Count Three, for a total of 120 months, or 10 years, imprisonment.

States v. Casas, 356 F.3d 104, 126 (1st Cir. 2004)). We review voir dire questioning for abuse of discretion. United States v. Bergodere, 40 F.3d 512, 517 (1st Cir. 1994). Finally, because Sherman argues that the district court's choice of language in its otherwise legally correct jury instruction tended to mislead the jury, we look for abuse of discretion. United States v. Deppe, 509 F.3d 54, 58 (1st Cir. 2007).

## A. Sufficiency of the Evidence

Title 18 U.S.C. § 924(c)(1)(A) requires a mandatory consecutive sentence for "any person who, during and in relation to any . . . drug trafficking crime . . . in furtherance of such crime, possesses a firearm." Thus, to obtain a conviction, the government must show the defendant committed a drug trafficking crime and possessed a firearm during that time, and the possession of the firearm was in furtherance of the crime. United States v. Marin, 523 F.3d 24, 27 (1st Cir. 2008). Sherman pled guilty to the drug trafficking offenses[3] at the trial and admitted possession of the firearms, leaving the government to "illustrate through specific facts, which tie the defendant to the firearm[s], that the

---

[3] A "drug trafficking crime" means any felony punishable under the Controlled Substances Act, see 18 U.S.C. § 924(c)(1)(D)(2), such as manufacturing marijuana, see 21 U.S.C. § 841(a)(1), or conspiracy to manufacture marijuana, see 21 U.S.C. § 846. We also have observed that possession with intent to distribute is a drug trafficking crime. United States v. Luciano, 329 F.3d 1, 6 (1st Cir. 2003).

firearm[s] [were] possessed to advance or promote the criminal activity." Grace, 367 F.3d at 35 (citations omitted).

Because the mere presence of a firearm is insufficient for a § 924(c) conviction, id. at 35, the government must demonstrate "some sufficient nexus between the firearm and the drug trafficking offense." Robinson, 473 F.3d at 399. In our case law, we have counseled that a sufficient nexus exists where the firearm protects drug stockpiles or the defendant's territory, Luciano, 329 F.3d at 6, enforces payment for the drugs, United States v. Garner, 338 F.3d 78, 81 (1st Cir. 2003), or guards the sales proceeds, Marin, 523 F.3d at 28.

Noting that "[t]he 'in furtherance of' element does not have a settled, inelastic, definition," Marin, 523 F.3d at 27 (citations omitted), and recognizing that the legal issue is not clearly settled, Felton, 417 F.3d at 104, we have evaluated "in furtherance of" evidence from objective and subjective standpoints, Marin, 523 F.3d at 27 (citing Felton, 416 F.3d at 104-05). Applying the objective analysis, this court has acknowledged a number of factors that the trier of fact may consider including "whether the firearm was loaded, whether the firearm was easily accessible, the proximity of the firearm to the drugs, and the surrounding circumstances." Robinson, 473 F.3d at 400; see also Felton, 417 F.3d at 105 (type of weapon and legality of possession); United States v. Ceballos-Torres, 218 F.3d 409, 414

(5th Cir. 2000) (type of drug activity conducted).  Compare Marin, 523 F.3d at 28 (affirming conviction where gun was purchased from another cocaine dealer and discovered with a defaced serial number and a loaded spare clip in the same residence as 700 grams of cocaine) with United States v. Delgado-Hernandez, 420 F.3d 16, 28 (1st Cir. 2005) (finding error in accepting guilty plea where no drug activity was detected in the rental car where the gun was found).  We also have observed that "a sufficient nexus is more readily found in cases where the firearm is in plain view and accessible to the defendant."  Robinson, 473 F.3d at 399.

Meanwhile, although there generally is no direct proof of subjective intent, we have noted that subjective intent may be inferred from the objective circumstances.  Felton, 417 F.3d at 105 n.5.  Thus, in Marin, we inferred subjective intent to possess a weapon in furtherance of the drug trafficking crime from the obliterated serial number, proximity to drugs, and other factors.  Marin, 523 F.3d at 28.

In the present case, the two firearms were accessible and easily loadable, compare Grace, 367 F.3d at 31 (affirming conviction where the jammed gun was kept under a bed in a drawer that was blocked by a duffel bag, trash can, and box of books and no ammunition was in the house), and in close proximity to over 500 marijuana plants.  One firearm was in plain view, and the other was

illegal to possess, see Marin, 523 F.3d at 28.[4]  On the other hand, the doors to the camp were unlocked, and there was no direct evidence of persons coming to the camp to transact business,[5] compare Grace, 367 F.3d at 36 (affirming conviction where the defendant had not owned a firearm for a decade until two robberies of her home from which she was selling drugs).  Further, a government witness acknowledged that the remote location provided the principal protection for the drug enterprise. Recognizing that the sufficiency issue is arguably close, we believe a jury rationally could determine that the firearms furthered the drug trafficking crimes by protecting the fruits of the conspiracy. This conclusion respects our "very circumscribed role in gauging the sufficiency of the evidentiary foundation upon which a criminal conviction rests," United States v. Noah, 130 F.3d 490, 494 (1st Cir. 1997), and our deference "to inferences formulated by the jury in the light of its collective understanding of human behavior in

---

[4] Sherman was under no obligation to offer an innocent explanation of the firearms.  See Grace, 367 F.3d at 32 (Grace testified that she purchased the gun to protect herself and her daughter).  However, the jury was free to note that the firearms lacked an obviously innocent purpose.  For example, they were neither hunting rifles nor unloaded antiques mounted to the wall. See Ceballos-Torres, 218 F.3d at 415.

[5] During the June 11 search, the officers did, however, find leaves scattered on the floors and concluded that some marijuana had been processed into "shake," slang for the leaves of the marijuana plant that can be sold more cheaply than the plant's bud. The jury heard this evidence and reasonably could have believed Sherman had been selling shake.

the circumstances revealed by the evidence," United States v. Passos-Paternina, 918 F.2d 979, 985 (1st Cir. 1990) (citations omitted).

These facts differs from those in United States v. Ellis, 168 F.3d 558 (1st Cir. 1999), a case on which Sherman relied both in his brief and during argument. In Ellis, we found an insufficient nexus between roughly 65 marijuana plants discovered in a detached garage and a shotgun and handgun hidden under a bureau in Ellis's small bedroom where it was difficult to shift furniture and thus the guns were not easily accessible. Id. at 560, 563. Sherman's small camp housed all 500 marijuana plants and both handguns, neither of which was contained or concealed beneath cumbersome objects.[6]

We find equally unpersuasive Sherman's argument that the marijuana plants had not matured and therefore had no present value to warrant firearm protection. We think it obvious the plants had significant value; otherwise, Sherman would not have engaged in the time-consuming and extensive operation to plant hundreds of them. Based on the going rate for marijuana in Piscataquis County, the eventual sale of the 500 plants when matured would have produced between $350,000 and $437,500. As common sense dictates and just

---

[6] We find Sherman's reference to the Supreme Court's recent Ressam decision at best irrelevant to this case. United States v. Ressam, 128 S. Ct. 1858 (2008).

-12-

as the school boy invests in a government savings bond, the wine connoisseur purchases a bottle he or she believes will age well, and the student finances a college education, the future value of the marijuana plants, on a natural continuum toward maturity, factors into their present value. This common sense approach leads us to hold that the jury could rationally conclude the two handguns, one illegally possessed, in close proximity to 500 marijuana plants furthered the drug trafficking crimes.

**B.      Voir Dire**

Sherman's contention that the Magistrate Judge abused her discretion by refusing to ask his list of propounded questions is unavailing.   Federal judges are "accorded ample discretion in determining how best to conduct the voir dire."  United States v. Orlando-Figueroa, 229 F.3d 33, 44 (1st Cir. 2000) (quoting United States v. Brown, 938 F.2d 1482, 1485 (1st Cir. 1991) (internal quotation marks omitted).  This discretion is "subject only to the essential demands of fairness." Real v. Hogan, 828 F.2d 58, 62 (1st Cir. 1987).   Because the trial court observes the demeanor and reactions of the prospective jurors, we review its determination of jury impartiality with "special deference."   United States v. Moreno Morales, 815 F.2d 725, 733 (1st Cir. 1987).  A court "need not permit counsel to dominate the process, nor pose every voir dire question requested by a litigant.  It is more than enough if the court covers the substance of the appropriate areas of concern

by framing its own questions in its own words." Real, 828 F.2d at 62 (citations omitted).

The function of voir dire is not to counsel prospective jurors on the rules and procedures of criminal law but rather to expose potential bias or prejudice. Morgan v. Illinois, 504 U.S. 719, 729 (1992); United States v. Noone, 913 F.2d 20, 32 (1st Cir. 1990); Schlinsky v. United States, 379 F.2d 735, 738 (1st Cir. 1967) ("[T]he purpose of the voir dire is to ascertain disqualifications."). See also United States v. Anagnos, 853 F.2d 1, 4-5 (1st Cir. 1988) (court should ask whether veniremen will give additional credence to government witness testimony); United States v. Pappas, 639 F.2d 1, 5 (1st Cir. 1980) (same). Thus, Sherman's reliance on the capital case Morgan v. Illinois, in which the Court noted the constitutional requirement of jury impartiality and required an inquiry into the venire's potential bias toward a death sentence following a finding of guilt, is misplaced. 504 U.S. at 739. Sherman's proposed questions dealt not with potential juror prejudice but with seven general principles of the criminal justice system. The Magistrate Judge correctly deemed the list beyond the purview of voir dire. The record reveals that the Magistrate Judge asked a series of questions designed to identify bias, excused those veniremen who demonstrated reluctance or an inability to be impartial, and appropriately deferred an

explanation of constitutional protections for criminal defendants to the district court's jury instructions.

## C.        **Jury Instruction**

Sherman argues that the instruction given was misleading in its choice of language, but he does not contend that it contained any errors of law. While we would review de novo a claim that an instruction embodied an error of law, we review for abuse of discretion the claim that a trial judge's particular choice of language was confusing to the jury. Deppe, 509 F.3d at 58; United States v. Nascimento, 491 F.3d 25, 33-34 (1st Cir. 2007).

The district court did not abuse its discretion when instructing the jury on the issue of whether Sherman's possession of the firearms was "in furtherance of" the drug trafficking crimes. As we have noted, the "in furtherance of" language lacks a settled definition, and we thus afford the trial judge "substantial latitude as to whether and how to elaborate." Felton, 417 F.3d at 106. We consider the challenged language not in a vacuum but "in light of the charge as a whole." Deppe, 509 F.3d at 59. Here, the district court described the jury's duties, discussed Sherman's constitutional protections, and outlined the statutory requirements for a § 924(c) conviction, including a detailed instruction regarding the distinction between mere presence and illegal presence. Explaining that the difference was "a matter of degree and circumstances," Felton, 417 F.3d at 106

(citation omitted), the court relied on circuit case law to elucidate factors the jury might consider.[7] See Robinson, 473 F.3d at 399-400; Felton, 417 F.3d at 105. See also United States v. Montañez, 105 F.3d 36, 39 (1st Cir. 1997) (noting that proposed instruction was drawn directly from another circuit case).

The court also appropriately denied Sherman's requested instruction. "We have repeatedly recognized that a defendant is entitled to an instruction on his theory of defense if sufficient evidence is produced at trial to support the defense and the proposed instruction correctly describes the applicable law." Id. In Montañez, we found fault with an instruction that omitted certain elements of an entrapment defense previously enumerated by this circuit which fell in the defendant's favor. Id. at 39-40. In contrast, Sherman's proposed charge did not reflect a legal theory but rather, as the district court correctly surmised, effectively ordered a judgment of acquittal. Sherman did not present sufficient evidence at trial to support such a charge.

We discern no error in the district court's charge. "The jury instruction at the end of the trial . . . was an entirely

_____

[7] We agree with Sherman that the district court could have included as a factor for consideration the location where the guns were found (here, a remote camp) but recognize that the court instead chose to proceed along a strict recitation of factors this circuit already has promulgated. This decision was not an abuse of discretion. See United States v. Prigmore, 243 F.3d 1, 17 (1st Cir. 2001) ("[A]ttempts to clarify inherently nebulous concepts can do more harm than good.").

correct statement of the law."  Noone, 913 F.2d at 33 (citing United States v. Silvestri, 790 F.2d 186, 191-92 (1st Cir. 1986)).

### III.

For the foregoing reasons, we affirm Sherman's conviction under 18 U.S.C. § 924(c)(1)(A).